CASE 2—PETITION ORDINARY—FEBRUARY 21.

97    9
e133  690

# Memphis & Cincinnati Packet Co. v. Nagel.

### APPEAL FROM M'CRACKEN COURT OF COMMON PLEAS.

1. CARRIERS—PUNITIVE DAMAGES.—Where a common carrier accompanies his violation of contract with a passenger with willful and wanton oppression or violence, or unlawful personal restraint, or conduct insulting in word, tone or manner, he becomes liable to all the remedies of the law against tort-feasors, including the liability to pay punitive damages.

   In this action against a packet company, a common carrier, to recover damages on account of defendant's failure to stop its boat and put plaintiff off at the place for which she had purchased and presented a ticket, and finally putting her off at a strange place, the court properly gave an instruction telling the jury in substance that they might find for plaintiff punitive damages if they believed from the evidence that the act of defendant was willful, or the result of gross neglect, or that the conduct of defendant's employes was insulting either in manner, words or tone, there being testimony tending to show such was the fact.

2. SAME.—A corporation as well as a natural person may be held liable in punitive damages for injuries inflicted by the tortious acts of its employes committed within the scope of their authority.

3. MEASURE OF DAMAGES.—It was proper for the court to authorize the jury to consider in estimating damages such bodily and mental suffering as was proximately caused by the acts of defendant.

4. THE CONFUSION IN THE ORDER OF ARGUMENT OF COUNSEL TO THE JURY is not of sufficient importance to authorize the court to set aside the verdict.

CAMPBELL & CAMPBELL FOR APPELLANT.

1. This was an action for breach of contract, and even though the failure to perform was wilful, it was error to give an instruction authorizing punitive damages. (1 Sedgwick on Damages, (8 ed.), vol. 1, sec. 370; *Idem*, sec. 98; *Idem*, vol. 2, sec. 864; Schouler on Bailments and Carriers (2d ed.) sec. 636; 5 Lawson's Rights, Remedies and Practice, p. 4306; Miles v. Miller, 12 Bush, 134; 4 Am. Railroad and Corporation Rep., p. 659; 5 Am. and Eng. Ency.

Memphis & Cincinnati Packet Co. v. Nagel.

of Law, p. 21; Walsh v. Chicago, &c., R. Co., 42 Wis., 23; Ky.
Cent. R. Co. v. Dils,. 4 Bush, 593; Duche v. Wilson, &c., 9 Hun.,
519; Grand Tower Co. v. Phillips, 23 Wall, 471; Toledo,.&c., R.
Co. v. Roberts, 71 Ill., 540; 1 Sedgwick on Damages (7th ed., 45);
Hamlin v. Great Northern Ry. Co., 1 H. & N., p. 408.)

2. Exemplary or punitive damages should not be allowed against a
corporation for the acts of its servants, unless it expressly au-
thorized the act as it was performed, or afterwards ratified it,.or
was negligent in hiring the servant, or retaining him in its em-
ploy. (1 Sedgwick on Damages (8th ed.), sec. 380; Hutchinson on
Carrier's, sec. 814, *et. seq.*; 2 Am. and Eng. Ency. of Law, p. 754;
2 Wait's Actions and Defenses, p. 448.)

3. The court erred in allowing plaintiff to both open and conclude the
argument.

4. The court should not have submitted to the jury as an element of
damage the sickness of defendant or mental distress. (12 Ky.
Law Rep., 555.)

W. D. GREER AND CHAS. K. WHEELER FOR APPELLEE.

1. Exemplary·damages may be recovered for breach of contract by
a common carrier of passengers where there is oppression, fraud,
malice, insult, or other wilful misconduct evincing a reckless
disregard of consequences. (Dawson v. L. & N. R. Co., 6 Ky.
Law Rep., 668; Miles & Miller, 12 Bush, 135; L. & N. R. Co. v.
Ballard, 10 Ky. Law Rep., 735; L. & N. R. Co. v. Jenkins, 15 Ky.
Law Rep.; 2. Sedgwick on Damages (8th ed.), p. 244; Cincinnati
R. Co. v. Richardson, 14 Ky. Law Rep.; L. & N. R. Co. v. Wilkin-
son, 15 Ky. Law Rep., 92; .Dodge v. Barton, 28 Cent. L. J., 186;
Thompson on Negligence, p. 1264; Samuels v. Richmond & Dan-
ville R. Co., 23 Am. St. Rep., 883; Dorroh v. Ill. Cen. R. Co., 7
Am. St. Rep., 629; Caldwell v. Richmond & Danville R. Co., 89
Ga., 550, 553; Chattanooga R. Co. v. Lyon, 89 Ga., 16; 28 Am. St.
St. Rep., 877 and authorities there referred to.)

2. If there was anything prejudicial to defendant in the order of
the argument, its objection and exception came too late.

3. The court properly allowed the jury to consider the plaintiff's ill-
ness and suffering as an element of damage in making up their
verdict. (Sedgwick on Damages (8th ed.), vol. 1, 208.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

The appellee was a passenger on the steamer Buckeye
State, belonging to the Memphis & Cincinnati Packet Com-
pany, and employed by them in the passenger trade as a
common carrier between Memphis, Tenn., and Cincinnati,

Ohio, appellee taking passage at Paducah, Ky., for New Albany, Ind., paying the fare demanded and securing her ticket to that place.   These facts are admitted by the pleadings.   The captain of the steamer refused to land at New Albany and permit appellee to get off his boat, but against her earnest protest and entreaty carried her against her will and consent beyond New Albany, Ind., and put her ashore on the Kentucky side of the river, at the mouth of the canal, in or near Portland, Ky., a place wherein she had neither relative nor friend nor acquaintance, in the outskirts of a city unknown to her.   The facts of the case are fully and correctly recited in the opinion of the Superior Court of Kentucky, that tried this appeal from the McCracken Court of Common Pleas, and may be found in 15 Ky. Law Rep., p. 742, to which reference is made, and need not be more specifically recited here. The Superior Court affirmed the judgment of the lower court, which was for $900, in favor of appellee, based on the finding of the jury that tried the cause, same being certified to this court on further appeal by appellant.

The court below gave to the jury two instructions, one in the usual form, defining a state of case wherein plaintiff might recover the actual damages sustained, the other wherein she might, if the jury found the state of case as submitted, recover exemplary or punitive damages; and it is of this last-named instruction that appellant specially complains, its contention being this, that this suit being founded on contract, and not in tort, the law does not authorize any verdict against appellant beyond actual damages, that is, compensation for the injury actually sustained. It may be said of all cases of this kind that they belong to that class of cases that sound in damages. Such is plaintiff's contention, clearly stated, reciting the acts of defendant

on which she bases her claim, that is the wrongful and un-
lawful carrying of her person, against her will and protest,
beyond her destination, accompanying same with rough lan-
guage, insulting in its tone and manner. Issue being
joined on these averments, plaintiff placing her damages at
$1,995, of course not intending to say that her actual dam-
ages sustained, as estimated by courts and juries under the
law, amounted to so much, but relying not only on the
wrongful act done and committed against her person, but
upon the manner as well, as also the time and place and the
circumstances thereof, saying same was wilfully and wan-
tonly done, done recklessly, disregarding her rights, thus
clearly indicating to appellant her claim for punitive dam-
ages. Her case was thus properly stated and issue duly
joined thereon.

It may be said that while the contract between the plain-
tiff and defendant for passage on their steamer from Pa-
ducah, Ky., to New Albany, Ind., was necessary to be
stated and must have been proven if denied (which it was
not), it served chiefly and primarily to fix the status of the
parties, the one to the other, plaintiff as the passenger and
defendant as the common carrier, this being all that was
actually done in this case, no special contract being made,
but the whole matter being then left to the law to imply—
or rather to fix and declare—what were the respective
rights of the parties under the relations thus created—as
thus to transport her as a passenger with the highest prac-
tical degree of care used by prudent and careful persons en-
gaged in such business, as expeditiously as the mode of
travel permitted, to protect her during the voyage from in-
jury and insult, even from obscenity, from strangers
as well as from the servants of the company, and finally to
land the steamer at the usual place of landing at New Al-

bany, Ind., and to give her a reasonable and safe opportu-
nity to leave said boat.

In all this contract implied by law from this relation es-
tablished, there is nothing inconsistent with the reserva-
tion of every other personal right. that the law in all places
and at all times accords to every person, as the freedom of
the person from assault; from injury, from unlawful deten-
tion, from every species of violence, unlawfully and wrong-
fully inflicted; and thus it is that cases of this character
against common carriers   pass so easily from   the usual
limitations and restrictions of ordinary contracts and range
themselves under the law of torts. So that while the com-
mon carrier  is under an implied   contract to   do certain
things, he may yet easily go beyond the limitations and
duties of his contract and become at one and the same time
and by one and the same act a violator of his contract and
a tort-feasor, and if passing the limits of or making default in
his contract, he accompanies his wrongful action by wilful
and wanton oppression, or uses violence or unlawful per-
sonal restraint, or accompanies his wrongful act toward his
passenger with conduct insulting in word, tone or manner,
he becomes liable to all the remedies of the law against tort-
feasors, including this liability to pay punitive damages in
cases where same may be lawfully adjudged.      ,      ,

All this results from sound considerations of public pol-
icy, from the high degree of protection necessary to be
thrown around persons who for the time being are so com-
pletely within the power and control of common carriers,
especially by railway or by steamboat. For the time be-
ing the captain of the steamer is all powerful; his word is
the law; there is none to resist him. But he must exer-
cise this power for good, not for evil; he must exercise it
lawfully, and if he fails to do so his master, the company,

whose servant he is, must answer in damages.  They must answer, though an artificial person, a corporation, in the same way and manner, and to the same extent, as a private individual who may be a common carrier. This was well said by the Superior Court in this case.  Hence it is that in all these cases the common carriers are held responsible for punitive damages in cases falling within the line above designated, as in actions of tort. •

This instruction complained of, after submitting to the jury that they must find the actual damages sustained by reason of plaintiff being carried beyond her destination, said further:

"And if they believe from the evidence, that the failure of the defendant's employes in charge of said boat, to put plaintiff off at New Albany, was wilful, or the result of gross or wanton or intentional neglect, on the part of defendant's employes, in the discharge of their duties, to carry her and her trunk, and put them off, or that the conduct of defendant's employes was insulting toward plaintiff either in manner, word or tone, they may assess the damages at any sum which they may believe from all the evidence in the exercise of a sound discretion the plaintiff ought to recover, not exceeding the amount claimed."

This, we think, is a fair statement of the law which, if supported by the facts upon which it is based, authorizes the awarding of exemplary damages by the jury.

Appellant contends further that exemplary damages should not be awarded against a corporation for the acts of its servants unless it expressly authorized the act as it was performed, or afterwards ratified it, or was negligent in employing its servant or in retaining him in its employ. And for this he quotes Mr. Sedgwick on Damages, vol. 1, sec. 380.  True, the learned author says such a rule ob-

tains in many jurisdictions. Fortunately it has never ob-tained in Kentucky, and we are not now so impressed with its soundness or authority as to undertake to engraft it on our jurisprudence. Of little value to the injured and outraged passenger would all other declarations of law be if this rule obtained as stated.

The later and better rule seems to be that corporations are liable for the acts of their servants committed within the scope of their employment, as by the master of a steam-boat or the conductor of a railway, with reference to their passengers. This rule has often been applied in Kentucky.

As to the evidence submitted by plaintiff to the jury on this trial, it is sufficient to say that it tended to establish the allegations made in plaintiff's petition, and if so, the court was authorized to submit it to the jury. They were then the sole judges of its value and sufficiency.

As to the bodily and mental suffering and the spell of sick-ness resulting to plaintiff by reason of the wrongful act of the defendant in taking her beyond her destination, this was submitted to the jury for consideration only on the con-dition that it was true in point of fact, and that it was proximately caused by said acts of defendant. The attend-ing physician was of this opinion, and so testified, as well as plaintiff and other members of the family. Neither do we think the confusion in the argument by the sever-al counsel of this case in the court below is, on the facts as stated in the bill of exceptions, of sufficient importance to set aside a verdict just and proper under all the facts of the case.

In support of the general doctrines announced herein we refer to Louisville & Nashville R. Co. v. Ballard, 85 Ky., 307, and to the same case on a second appeal, 88 Ky., 159; Dawson v. L. & N. R. Co., 6 Ky. Law Rep., 668;

Samuels v. Richmond & Danville R. Co., 28 Am St. Rep., 883; Spellman v. Richmond & Danville R. Co., 28 Am. St. Rep., 858.

Judgment affirmed.