CASE 73.—ACTION BY SUSAN SUMMERS AGAINST THE LOU-ISILLE & NASHVILLE RAILROAD COMPANY FOR DAMAGES FOR PERSONAL INJURIES.—May 5, 1909.

## L. & N. R. R. Co. v. Summers

Appeal from Bullitt Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1. Carriers—Carriage of Passengers—Direction of Passenger to Wrong Train—Actions—Admissibility of Evidence.—In an action by a passenger for damages from being directed to a train which did not stop at her destination, instead of the proper one, which followed a few minutes later, testimony that her son had been directed to meet her on arrival of the train which did not stop, and that he did so, and, not finding her, returned home so that she was compelled to 'walk, was improperly admitted on the question of damages, since, if she had been directed to the proper train, her son would still not have met her.

2. Carriers—Carriage of Passengers—Ejection of Passenger—Action for Damages—Punitive Damages.—Punitive damages were not recoverable where the ejected passenger, after stating that the agent was insulting, testified only that he returned her ticket, saying that he would not stop at her destination, but would put her off at an intermediate point, and

that as they approached that place he picked up her baggage and said: "You get off of here. Come on. You've got to get off."

CHARLES CARROLL and BENJAMIN D. WARFIELD for appellant.

NAT W. HALSTEAD and BEN CHAPEZE for appellee.
No briefs record misplaced.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, Susan. Summers, a lady 65 years of age, on Sunday, April 28, 1907, purchased of appellant's ticket agent at Union Station in Louisville, Ky., a ticket over its line of railroad to Gap-in-Knob, a station on appellant's railroad in Bullitt county, Ky., about 17 miles from Louisville. After purchasing the ticket she went in company with her brother to the gate through which passengers go in leaving the station to board trains. She presented her ticket to the gatekeeper, and claims that he told her to take the Bardstown & Springfield Accomodation train. which was known as train No. 91. In obedience to the direction of the gatekeeper, she, in company with her brother, approached train No. 91 for the purpose of boarding it, and the brakeman stationed at the door of the car looked at her ticket and directed her to take that train. From this time on the evidence is conflicting.

According to appellee, the conductor in charge of the train, shortly after it left Union Station, came to her, and she presented her ticket. He took it. looked at it, and said: "Gap-in-Knob." He then punched the ticket and went on collecting fares or tickets from other passengers. Some time before reaching the station on appellant's line known as "South Louisville," which is distant about three miles from Union Station,

the conductor returned and told appellee that she
would have to take her ticket back, that he would not
stop at Gap-in-Knob, and that she would have to get
off at South Louisville. She refused to accept the
ticket, and he then told her she would have to get off
the train. As the train approached South Louisville,
he picked up her suit case and said: "Come on. You
have got to get off." As she got off, the conductor di-
rected the agent to take charge of her and flag some
train and instruct the conductor thereof to put her off
at Gap-in-Knob. The depot was locked or fastened,
and she was compelled to remain standing on the plat-
form about an hour until the arrival of the train upon
which she took passage to Gap-in-Knob. Her son had
been directed to meet her at the station, Gap-in-Knob,
upon her arrival there on the Bardstown & Springfield
train upon which she was first a passenger and from
which she was ejected. He was there to meet her, but,
finding that she was not on the train, returned home.
When appellee reached Gap-in-Knob she was com-
pelled to walk over rough and muddy roads and to
carry a suit case weighing from 40 to 50 pounds to her
home, a distance of about a half mile. Owing to her
excitement and mortification in being ejected from the
train and being compelled to remain at South Louis-
ville, and having to walk a distance of a half mile in
the dark and carry a heavy valise, she was made sick
and suffered a great deal for two or three weeks there-
after.

The testimony for appellant was to the effect that
train No. 91, a Bardstown & Springfield train, and
the one which appellee boarded, left for Bardstown at
6 p. m. Train No. 95 left for Bowling Green at 6:10
p. m., and train No. 93 left for Greensburg at 6:30 p.

m.   All of these trains ran over appellant's main stem from Louisville to points beyond Gap-in-Knob.   Train No. 91 left the main line for the Bardstown & Springfield branch at Bardstown Junction.   Train No. 93 left the main line at Lebanon Junction for Greensburg via Lebanon. Train No. 95, which ran to Bowling Green, ran the entire distance on the main line.   These trains were all in the train shed at Union Station, Louisville, loading passengers at the time appellee passed through the gate and boarded Springfield train No. 91.   On Sundays the Springfield train No. 91 did not stop at any point between Louisville and Bardstown Junction to let off passengers, and train No. 95, the Bowling Green train, did not stop at any point between Louisville and Lebanon Junction to let off passengers.   Train No. 93, the Greensburg train made all of the stops that were required to be made between Louisville and Lebanon Junction.   In stead of taking train No.  91, appellee should have taken train No. 93.   Appellant's conductor testified: That, as he was walking through the train on leaving Union Station, he found appellee about the middle of the ladies' car sitting on the west side of the coach. She presented a ticket for Gap-in-Knob.   He told her: That they did not stop at Gap-in-Knob on that run; that it was a bad place to stop, a bad place to flag from; that if any thing happened they couldn't get around that curve; that No. 93 made all the stops and followed No. 91 out of Louisville in 30 minutes; that she would have to get off in South Louisville and catch No. 93 out.   He then passed on through the car, took up the rest of the tickets, then came back to where Mrs. Summers was, and explained to her the reason that they could not stop at Gap-in-Knob; that,

if the air got stuck on the train or anything happened while they were there making the stop, it would be almost impossible to get a flag back far enough to keep No. 95 from running into them from the rear. He further testified: That he was not rude or insulting or boisterous in any way towards Mrs. Summers; that he knew her and all of her family.

Upon the conclusion of the evidence the case was submitted to the jury, which returned a verdict in appellee's favor for $1,000. From the judgment based thereon, the Louisville & Nashville Railroad Company prosecutes this appeal.

It is first insisted: That the court erred in permitting appellee and her son to testify to the fact that he had been directed to meet appellee on the arrival of the Bardstown & Springfield train, and to the further fact that appellee's son, after he had gone to that train and found she was not a passenger thereon, left the station, and upon her arrival she was compelled to walk to her home and carry a valise; that the court also erred in instructing the jury to consider these facts in determining the amount of damages to be awarded. Our conclusion is that appellant's contenion is correct in both respects. The Bardstown & Springfield branch train did not stop at Gap-in-Knob on Sundays. If appellee and her son supposed it did, it was their mistake. The fact that her son failed to meet her, and she was therefore compelled to carry her valise to her home, was not due to any negligence on the part of appellant's servants in directing her to take the Bardstown & Springfield branch train, or in ejecting her from the train. If she had been directed to take the proper train, No. 93, he still would not have met her. Under the circumstances, then, it was error

to admit such evidence and to predicate any right of recovery thereon.

It is next insisted that the court erred in permitting appellee to testify that the conductor, in a rough, rude, and insulting manner, told her to get off. The argument is made that such testimony is only an expression of opinion on the part of the witness; whereas, she should have simply testified to the facts and let the jury conclude therefrom whether or not the conductor's manner was rough, rude, or insulting. In the same connection it is contended that the facts of the case did not justify an instruction authorizing punitive damages. For the purpose of determining these questions, we give below the exact language of the witness: ''Q. After the train had pulled out, shortly thereafter, while you were in Louisville, did the conductor, Ike Wright, come around? A. He came around as usual to collect the tickets. Q. Now, then, what occurred first between you and the conductor? A. He came to where I was. I presented my ticket. He looked at it and said, 'Gap-in-Knob,' punched the ticket, and went on. Q. He took your ticket? A He took my ticket, punched it, and went on through the car. Q. Now, after that, did he come back to you before you reached South Louisville? A. Yes, sir; he came to me and says: 'Here take your ticket, I will not stop and put you off at Gap-in-Knob.' I said: 'What are you going to do with me?' He says: 'I will put you off at South Louisville.' I says: 'I won't take the ticket back. You've punched the ticket, and I bought it for Gap-in-Knob, and I won't take it back.' Then he, in a rough, rude. insulting manner, told me, said, 'You get off of here.' Q. Then what occurred there? A. We came nearer and nearer the depot. He picked

up my baggage, and he says: 'Come on. You've got to get off.' He was mad. I didn't take the ticket back, I think, was the reason.''

While we think it was proper to permit the witness to testify that the conductor's manner was rude or insulting, yet we are also of the opinion that, where the facts to which the witness testifies do not show that he was insulting in words, manner, or tone, a punitive damage instruction should not be given. We have carefully examined a number of cases wherein this court approved of a punitive damage instruction, and in every one of them facts were testified to showing that the railroad company's agents were rude or insulting. Thus in the case of Louisville & Nashville R. R. Co. v. Ballard, 88 Ky. 159, 10 R. 735, 10 S. W. 429, 2 L. R. A. 694, the conductor told the plaintiff, who was a woman, that, if she would not go on, she would have to get off the train and walk back. He waved his hand towards the door, and she went carrying a bundle and valise. He followed her to the door and stood on the platform without offering to assist her. The brakeman, who was on hand offered her no assistance, but seemed to enjoy the situation. As she stepped on the ground from the coach, the brakeman grinned at her with a broad grin. Both he and the conductor seemed to enjoy her discomfiture. Other facts were testified to showing the conductor's tone of voice and manner towards her were insulting. In the case of Memphis & Cincinnati Packet Co. v. Nagel, 97 Ky. 9, 29 S. W. 743, 16 R. 748, the plaintiff, accompanied by another young lady, took passage for New Albany, Ind., on defendant's steamboat. When the boat approached New Albany, the porter came to her

and asked her for her check, and told her to get
her trunk ready to get off. She got ready and on
coming out of her stateroom found that the boat
was opposite the New Albany landing and was
making no effort to land there. She went to the
front of the boat and told the captain. that she
wanted to land at New Albany. His answer was: "I
thought you were registered for Louisville." She
said: "No, my ticket was for New Albany." The cap-
tain then said to the clerk, "I thought you told me
this young lady was registered to Louisville." The
clerk responded: "She is." The plaintiff then said
to the clerk, "You know I wanted to get off at
New Albany," and he replied, "I never dispute a
lady's word.". There were other facts showing that
the captain spoke roughly to her. The language of
the clerk was an intimation that the plaintiff was not
telling the truth, although, as a matter of fact she was.
In the case of Illinois Central R. R. Co. v. Winslow,
119 Ky. 877, 84 S. W. 1175, 27 R. 329, the facts testified
to showed that the brakeman abused the plaintiff,
who was a passenger in a caboose attached to a freight
train, and threatened to "knock a lung out of him."
In the case of L. & N. R. R. Co. v. Fowler, 123 Ky.
450, 29 R. 905, 107 S. W. 703, there the testi-
mony that the conductor's tone of voice was harsh and
his manner abrupt, and that he took hold of plain-
tiff's arm, roughly and pulled her from her seat, and
ejected her from the train, because she did not pro-
duce her ticket or tender her fare. Others present,
however, did volunteer to pay her fare. On the other
hand, this court in the case of Southern Railway in
Kentucky v. Hawkins, 121 Ky. 415, 89 S. W. 258,
28 R. 364, held that a punitive damage instruc-

tion should not have been given. In that case the party who was ejected from the train and brought the action testified as follows: "The conductor looked at it (the ticket) and said it was no good, that I could not ride on that. I asked him why, and he said the ticket wasn't any good. I told him that I got it the evening before and paid full fare for it. He still said it was no account, and I would have to pay my fare or get off. I told him that I couldn't pay my fare, that I didn't have any money. He said there wasn't any use in talking about it, and he pulled the bell cord and stopped the train. He walked in front of me, and when we got to the step he took me by the arm until I got down the steps. He did not get off the train. He helped me down to the bottom step, it seemed to me in a pretty rough way. He held me tolerably tight, but did not hurt me." In discussing the question this court said: "It will be observed that the conductor was neither offensive nor insulting to appellee. He applied to him neither force nor threats and did not even place his hand upon him except to assist him down the car steps. It is true the witness thought he helped him down the steps in a pretty rough way, yet when he describes his manner and explains what he did it is apparent that he was neither rough nor unkind. It is patent therefore that the conduct of the conductor was not such as to manifest a wanton or reckless disregard of appellee's rights or a disposition to oppress or humiliate him. What he said or did gave no cause for the infliction of punitive damages upon his employer. Therefore the instruction as to punitive damages should not have been given."

From a careful reading of these and other cases, we conclude that the following is the correct rule: Where the facts testified to, in and of themselves, show that the agent ejecting the passengers was insulting in words, manner, or tone, an instrucion authorizing punitive damages should be given. Where the witness, however, merely expresses an opinion that the conductor or other agent was insulting, and then proceeds to testify to facts which, in and of themselves, do not show that the employe's conduct was insulting in words, manner, or tone, a cause for punitive damages is not made out. Applying this rule to the facts of this case, it is manifest that appellee was not entitled to recover punitive damages. The words which she says the conductor used were not insulting. She testifies to no fact showing that his manner was offensive or insulting. As for as the record discloses, she did not attempt to describe the tone of his voice or to imitate it, so that the jury could determine whether or not his tone was insulting. From her own testimony it appears that the conductor was simply positive or emphatic in his manner and in the use of the language which he employed. This gave no cause for the infliction of punitive damages upon his employer.

Upon the return of the case, if the evidence be the same, the court will instruct the jury, substantially, as follows:

"(1) If you believe from the evidence that plaintiff, on the occasion in question, purchased a ticket from defendant's agent in Louisville, Ky., for Gapin-Knob, and at and by the direction of defendant's agent or agents took passage upon defendant's Bardstown & Springfield branch passenger train, and

that defendant's conductor thereafter ejected plaintiff from said train upon its arrival at South Louisville, you will find for the plaintiff.

"(2) Unless you believe from the evidence that plaintiff, on the occasion in question, purchased a ticket from defendant's agent in Louisville, Ky., for Gap-in-Knob, and at and by the direction of defendant's agent or agents took passage upon defendant's Bardstown & Springfield branch passenger train, and that defendant's conductor thereafter ejected plaintiff from said train upon its arrival at South Louisville, you will find for the defendant.

"(3) In case you find for plaintiff, you will award her such sum in damages as you may believe from the evidence will fairly compensate her for any mortification or humiliation, for any inconvenience or discomfort, and for any sickness which you may believe from the evidence she suffered as the direct or proximate cause of being ejected from said train."

Judgment reversed, and cause remanded for proceedings consistent with this opinion.