### · Stewart Dry Goods Company v. Arnold.

(Decided March 27, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch No. 1).

1. Malicious Prosecution—Action for.—In an action for damages for malicious prosecution, an examination of the evidence discloses the fact that there was not only want of probable cause, but no excuse for the arrest of plaintiff.

2.  Malicious Prosecution—Probable Cause.—The mere fact that employees of a store may have believed that articles of merchandise had from time to time been stolen, did not justify them in seeking to make an example of one in an effort to deter others from committing the offense. In such case there must be probable cause to excuse the prosecution.

3.  Malicious Prosecution—Extent of Inquiry.—The sole inquiry in this case is whether the party accused was finally discharged, and whether the person instigating the prosecution was actuated by malice, and if he had probable cause for preferring the charge.

H. H. NETTLEROTH,  R. C. KINKEAD for appellant.

GILBERT BURNETT and BURNETT & BURNETT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This appeal is prosecuted from a $625.00 judgment recovered by Nora B. Arnold, the appellee, in a suit for malicious prosecution. Appellant seeks a reversal for three reasons: (1) It insists the court should have directed a verdict in its favor because the evidence was insufficient to show a want of probable cause, or any malice. (2) The verdict is contrary to the evidence. (3) Because the court refused to permit appellant to prove either in defense, or mitigation that the official judgment in the police court, where appellee was dismissed, was not in harmony with the private opinion of the judge.

We think a statement of the facts is decisive of the two objections first named. The appellee was a resident of Eminence, in Henry County, some thirty miles from Louisville, and during December, 1911, went down to Louisville to spend the day with Miss O'Nan, a cousin. In the morning she was in the hands of a dentist, and jumping from the frying pan into the fire, she landed in appellant's store in the afternoon. The establishment is one of the largest in Louisville, selling all kinds of merchandise, and employing hundreds of clerks and attendants. On a large counter, near the center of the first floor, was a big lot of ladies gloves on bargain sale, at 69 cents the pair. Appellee, and her companion, Miss O'Nan, each desired a pair of tan gloves, and going to the counter, amidst the crowd of Christmas holiday shoppers, they were told, by the lady in charge, to wait on themselves, that is, to make their own selection from the gloves piled on the counter, and at this hour they must have been piled indiscriminately. After some lit-

tle search no tan gloves of proper size were found to fit Mrs. Arnold. She did find some white gloves of her size, and Miss O'Nan told her to hold them until they could complete their search, and ascertain if there were any tan gloves the right size. Mrs. Arnold, as she swears, had her left hand run through a muff, holding her purse in this hand next to her person. Mrs. Arnold and Miss O'Nan both say this pair of white gloves was held, or laid in her left hand, and in plain view, while Mrs. Arnold continued her search for tan gloves with her right hand. Appellant's store detective, who was standing nearby, says that Mrs. Arnold had the white gloves concealed in her muff. At all events, Mrs. Arnold and Miss O'Nan each found a pair of tan gloves of the right size, and they each handed to the clerk the gloves selected, and $1.00 each to pay for them, that is, $2.00 in all. The gloves and money were sent to the change, or wrapping counter. In a short time both pair of gloves came back, but the change out of $1.00 only. This mistake being noticed, the girl in charge returned the gloves and change to the cashier with request that the mistake be corrected, and for a return of proper change out of each $1.00. Mrs. Arnold and Miss O'Nan swear that while they were still standing at the counter, waiting for the second return of the change and gloves, the house detective, named Bremer, approached Mrs. Arnold, and inquired if she was going to pay for those gloves. She asked him what gloves he was talking about. He said those gloves you have in your hand. Bremen swears that he asked her if she was going to pay for those gloves she had in her muff. He also swears that at the time he accosted her, she and Miss O'Nan were leaving, and had gotten thirty or forty feet from the counter. Mrs. Arnold just then becoming conscious of the fact that she still had in her hands the white gloves, replied, certainly she would pay for them if she took them. The detective took the gloves away from her, and told Mrs. Arnold to follow him, and as the other witnesses say, he took her over into the office of Mr. Jones, the superintendent, refusing to let Miss O'Nan accompany them. In the superintendent's office she was grilled for about an hour, although appellant's witnesses put it more politely, and say they merely had an argument with her. According to Jones' testimony, Bremer brought her into his office, reporting that the lady had a little trouble about a pair of gloves, adding also that "Mrs. Arnold said that she

had the gloves, but did not know how they came in her possession, that she would pay any sum rather than have any trouble over the gloves, and that that was the first time she had been in any trouble."

Plying her with innumerable questions, and in answer to their inquiry, she told them her name, and place of residence. Learning that Eminence was her home, Jones sent for an employee, who knew the people of Eminence, and naming to her many of them, she asserted that she knew them all. Finally Jones suggested that his employee call Helburn Brothers, who were merchants at Eminence, and make inquiry about the prisoner. The inquiry was made over a telephone in Jones' office in the hearing of Mrs. Arnold. All the witnesses agree that Helburn replied that the woman was of good character, had never been in any trouble, and that he was very much surprised to hear of the charge against her. Mrs. Arnold swears that this employee also reported that Helburn said he would stand good for any account, or charge they had against Mrs. Arnold. Helburn substantially corroborates this. Mrs. Arnold swears she protested her innocence of any intent to steal the gloves, while Jones and Bremer insist that she never denied it. Doubtless they felt that from the mere fact that the gloves were in her hand she was guilty of larceny, and when she did not deny having the gloves, they assumed that she did not deny taking them with the intent to carry away, and appropriate them to her own use. Not satisfied with the proof of her good character from her home town, and with her own explanation, and without giving her an opportunity to call Miss O'Nan, her companion, they sent for the police. As the police were about ready to take her to the station, Miss O'Nan was permitted to come into the superintendent's office for a few moments. Jones, Bremer, and the policeman deny that they refused Miss O'Nan permission to go to the station with the prisoner, although Miss O'Nan, and appellee swear they begged this privilege. It is sufficient to say that she was not one of the party, and had to get to the station to join her relatives as best she could. After detaining them another hour, Miss O'Nan got in communication with a friend in the city, who hurried there, and made bond for the prisoner. Trial was set for Monday.

Appellant had an attorney employed to aid the city prosecutor, and it is admitted that after a full hearing

in the police court, the charge against her was dismissed. Except for the evidence of Bremer, there is no proof to show that Mrs. Arnold had attempted to carry away, or appropriate the gloves to her own use. Bremer says that when he accused Mrs. Arnold, she, with Miss O'Nan was leaving the store, and had gotten thirty or forty feet from the counter. In this statement he is not supported by another witness, or a single corroborative circumstance. It is undenied that the two pair of gloves purchased, and the change, totalling 62 cents, were still in appellant's possession. The two ladies swear that they were standing at the counter waiting for this change, and the gloves. It is unreasonable to suppose that these women, in order to steal one pair of gloves, would give up two pair, which they had paid for, and the 62 cents in change coming to them.

Jones, the superintendent, swore to the affidavit for her arrest. The only facts known to him upon which to base the affidavit were the statements above referred to, made by his private detective, and the gloves which were said to have been taken from the appellee. He says he never heard of the lady before, and therefore could have had no malice against her, but the flimsiness of the charge, and the character of facts supporting it, make it all the more necessary that he should investigate carefully for further facts and make inquiry as to her previous reputation. No further facts being developed, and her good character sustained, malice is to be presumed. We are also of opinion that her arrest was without probable cause, as judged by this record. Appellant may have had cause to suspect that from time to time thieves were guilty of shoplifting, and there may have been good cause to employ private detectives, and watchmen to apprehend such persons, but the question here is whether or not there was probable cause for believing Mrs. Arnold was guilty of such an offense. The mere fact that appellant's employes may have believed that articles of merchandise were from time to time stolen, did not justify them in seeking to make an example of this lady in an effort to deter others from committing the offense. To justify their conduct with reference to this lady, it must appear that she was guilty, or they had probable cause to believe her so. The evidence discloses beyond any question that she was not guilty, and we are of opinion that there was not only want of probable cause, but absolutely no excuse for her arrest. Of

course, we realize the value of aid from private individuals in law enforcement; society demands that every individual render such assistance. The law also aims to protect private property, but it is intended to be used against the guilty only. Private individuals may in good faith, and with probable cause for believing that an offense has been committed, invoke the aid of the law, and if it develops they were laboring under a mistake, they will be excused for any incidental suffering caused to an innocent victim of such circumstances; but there must be probable cause in order to excuse the prosecution. The case of Ferris v. Stark, 3 B. Monroe, aptly states the law on this proposition:

"The law, therefore, protects the prosecutor if he has reasonable or probable cause for the prosecution; that is, if he had such grounds as would induce a man of ordinary prudence and discretion to believe in the guilt and expect the conviction of the person suspected, and if he acts in good faith on such belief and expectation."

The court was eminently fair to appellant. Under its instructions the jury, in order to find for appellee, were required to believe the prosecution was instigated not only with malice, but without probable cause, and these questions were submitted in a very clear and concise way. As above indicated, we think the jury was abundantly justified in the conclusion they arrived at, and the appellant should not complain at the size of the verdict.

The remaining question is whether it was competent for appellant to plead, or introduce evidence to show by extraneous facts that the record judgment of Judge Boldrick, of the police court, in dismissing the prosecution did not disclose his motives for so dismissing. Proof of these motives appellant sought to supply. The lower court quite properly declined to enter into this inquiry. This court will presume that every magistrate has acted in good faith, and with honest purposes, and the police court judgment dismissing the charge must speak for itself. Of course, an action for malicious prosecution cannot be maintained where the prosecution has been terminated through collusion, compromise, or agreement between the accused and the complaining party. But such state of affairs is not even pretended here. Appellant's complaint is that he was denied the right to introduce evidence showing appellee was dis-

charged in the police court because the police judge was unwilling to send a woman to jail for stealing a pair of gloves. It was not proper to get away from the real issues, and inquire whether the police court tried appellee according to law, as presumed, or according to his ideas of what the law should be. The sole inquiry in this case is whether the party accused was finally discharged, and whether the person instigating the prosecution was actuated by malice, and if he had probable cause for preferring the charge.

The judgment of the lower court is affirmed.