### Louisville & Nashville Railroad Company v. Hawkins.

(Decided February 8, 1927.)

#### Appeal from Bullitt Circuit Court.

1.   Carriers.—It is duty of passenger to ascertain what train will take him to his destination, and if, through carelessness or mistake

and without being misled by those authorized to act for carrier, he takes wrong train, or one which does not stop at his destination, he may properly be ejected, though, if he has been misled or deceived by agents of railroad in charge of loading of passengers, he may recover if he is afterwards ejected.

2. Carriers.—Passenger, purchasing ticket for particular station, and told by gatekeeper to board particular train, and who was again told to get aboard by person in charge of train, held entitled to recover damages for ejection because train did not stop at his station.

3. Carriers.—$1,200.00 damages for wrongful ejection of passenger who had just left hospital, was forced to walk a mile through railroad yards in the rain, and compelled to return to hospital for further treatment, held not excessive.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN and J. F. COMBS for appellant.

OSSO W. STANLEY and H. H. GLENN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The court must determine whether a passenger who buys a ticket at a railroad station, presents it to the gatekeeper, and is told to take the train on a certain track, and who proceeds to that train and there again presents his ticket to the trainmen in charge and is instructed to go aboard and does enter the train and take a seat, and after the train pulls out is ejected by the conductor because that train does not stop at the station for which his ticket calls, may have a recovery.

Appellant railroad company relies upon the general rule which requires a passenger to inform himself whether or not the train which he is about to take is scheduled to stop at his destination before boarding it, and insists that if he fails to make such an investigation and takes the train and afterwards learns that it is not scheduled to stop at the station for which his ticket calls he is wholly without remedy, and cites and relies upon the cases of L. & N. R. Co. v. Miles, 100 Ky. 84; Hancock v. L. & N. R. Co., 27 R. 434; Flood v. C. & O. Ry. Co., 25 R. 2135; L. & N. R. Co. v. Gaddie, 162 Ky. 205. Appellee, Hawkins, admits this to be the general rule, but says it has exceptions, one of which allows the passenger who buys a ticket and presents it to the agent of the company in charge of the gate and receives instructions as to which train to take, and pursuant to that instruction goes to the train and there again presents his

ticket to the person in charge and is told to get aboard, is not without remedy if he is thereafter ejected from the train before he reaches his destination, and in support of this rule he cites the cases of L. & N. R. Co. v. Summers, 133 Ky. 684; M. & O. R. Co. v. Dill, 173 Ky. 412, 191 S. W. 80; L. & N. R. Co. v. Tuggles's Admr., 151 Ky. 409, 152 S. W. 270; L. & N. R. R. Co. v. Scott & Co, 141 Ky. 538, 133 S. W. 800; 6 Cyc. 556, note. If a passenger is instructed by the ticket agent of the railroad company, or by the agent at the gate as in this case, or by the person in charge of passengers to get aboard a train after his ticket has been presented to such agent such passenger is justified in following the instructions and relying upon the information, and if thereafter is ejected by the conductor before he reaches his station he is not without remedy. It is the duty of a passenger to ascertain what train will take him to his destination, and if, through carelessness or mistake, without being misled by those authorized to act for the carrier in the matter, he takes the wrong train or one which does not stop at his destination, he may properly be ejected therefrom; so says 10 C. J. 537. If, however, he is misled or deceived by the agents of the railroad company in charge of the loading of passengers the rule allows him a recovery if he is afterwards ejected. 4 R. C. L., p. 1068; 10 C. J. 737; 6 Cyc. 756.

In the instant case appellee, Hawkins, just out of the hospital, went to the Tenth street depot of the L. & N. R. R. Company, in Louisville, and purchased a ticket for Brooks, a station on its line not far from Louisville. With him was another passenger who boarded the same train. After purchasing his ticket Hawkins presented it to the gatekeeper, who, as Hawkins testifies, instructed him to take the train on track No. 8, and allowed him to pass through the gates. Hawkins proceeded to the train and there encounterd another agent of the railroad company in charge of loading passengers on to trains to whom he presented his ticket for Brooks, and was told to get aboard. On doing so he took a seat and the train soon pulled out of the station. Shortly thereafter the conductor came through the train taking up tickets, and when appellee presented his ticket he was told he was on the wrong train and would have to get off. Hawkins protested, telling the conductor in charge of the train that he had just left a hospital that day having undergone an

operation for appendicitis, and was not able to walk and that he could not walk and that he should not be put off. He says the conductor answered "that is your misfortune," and immediately stopped the train and ejected him. It was a cold, rainy evening. The point at which he was ejected was about a mile from the depot, in the midst of the railroad yards and a dangerous place for persons to be. He complains that he was required to walk some distance in bad weather and that he thus suffered great pain and was required to return to the hospital, where his wound from the surgical operation was found to have become aggravated. The agents of the railroad deny this testimony, and say that they did not direct appellee to take the train, or if they did they have no recollection of it. A case very similar in its facts to the one under consideration is L. & N. R. R. v. Summers, reported in 133 Ky. 684. In reversing the judgment on the first appeal, we directed the court upon another trial to instruct the jury that if it believed from the evidence that the plaintiff on the occasion in question purchased a ticket from defendant's agents in Louisville, Kentucky, for Gap-in-the-Knob, and at and by the direction of the defendant's agent took passage upon the Bardstown and Springfield branch passenger train, and was thereafter ejected, to find for plaintiff. That was the law of the case and is likewise the law of this case. A passenger taking a train without ascertaining whether it stops at the station for which he is purchasing a ticket and after being directed by the agents of the company in charge of passengers to take such train for his destination, is without remedy. But one who buys his ticket and at the suggestion of the agent or agents of the company in charge of passengers, takes a given train for his destination and that train does not stop at the station for which his ticket calls, and he is ejected at another point, has a cause of action. The court in instructing the jury in the instant case adopted the instructions in the Summers case *supra*.

(1) Appellant insists, however, that it was entitled to a peremptory instruction on the grounds that it was absolute duty of the passenger to ascertain that the train which he was boarding was scheduled to stop at Brooks, the station for which his ticket called. This insistence, however, can not be maintained in view of the rule we have just stated. A peremptory instruction under the evidence of this case would have been error.

(2)   It is next insisted by appellant that the judgment for $1,200.00 is grossly excessive.   With respect to the ejectment appellee testified:

"Yes, sir, and Mr. Howlett handed his ticket over to him and I gave him mine and he took Howlett's and said to me, 'You are on the wrong train,' and reached up and pulled the bell rope, and I said I can't get off, I just came from the hospital, and he said, 'That is your bad luck,' and I said, 'The gatekeeper pointed me to this train,' and he said, 'That is your bad luck,' and hesitated about getting off for I didn't think I could get up, and he took hold of me and I went on down to the steps and hesitated and said, 'I don't believe I can walk,' and he said, 'I can't help that,' and took hold of my shoulder and pushed me off and I was worn out.

"27.   During this conversation there was there with the conductor what was his manner, how did he act?

"A.   He acted like he was raw because I got on the train. (Defendant by counsel objects to question and answer No. 27; objection sustained by court.)

"28.   State whether or not his manner was loud, rude or abusive?

"A.   It was loud and abusive. (Defendant by counsel objects to question and answer No. 28. Objection sustained by court.)

"29.   State how he acted?

"A.   He acted in a loud way, a rough way, so that I knew he meant for me to get off and I got off; I hesitated at the step because I didn't think I could walk back.

"30.   Where did the talk occur?

"A.   At the steps just before I got off.

"31.   What was the nature and condition of the weather there, Mr. Hawkins?

"A.   It was raining.   It hailed and thundered and lightning, and it was raining some when I was put off.

"32.   At what kind of place were you put off the train?

"A.   Nothing but switch tracks, nothing but tracks.

"Q.   In the yards in Louisville?

"A.   Yes, sir.

"34. Any trains passing to and from, any switch engines?

"A. Yes, trains passing.

"35. Where did you go when he put you off the train?

"A. Back to the depot.

"36. How did you go?

"A. I could not tell you there were so many tracks; I just kept going.

"37. Are you able to tell the jury how far that was from where you were put off the train to the depot?

"A. About a mile, I reckon; I don't know for sure, but fully a mile.

"38. The whole way in which you traveled was through these yards and tracks?

"A. Yes, sir, I had to always be crossing over tracks, getting over to let switch engines pass me; I was scared to death."

Further along appellee testified that when he first left the hospital the incision in his side had almost healed, and that there was no pus forming in or flowing from it, but that shortly after his ejection from the train he returned to the hospital on account of the condition of his wound and that the incision had pus in it and it continued to be inflamed and give off pus and caused him a great deal of pain and suffering.

On account of the ejection from the train appellee testifies that he was required to return to the hospital and have his incision treated for some time, and that it gave him a great deal of pain. These facts considered it would not seem that a verdict of $1,200.00 could be regarded as grossly excessive. He was entitled to something for his wrongful ejection as well as for the humilation and discomfort incident thereto, but his biggest cause of complaint was the physical pain which he suffered as a result of being required to walk for almost a mile and thus injure the wound in his side which resulted in pain and suffering as well as confinement. All the facts considered the verdict seems rather small. The jury accepted the testimony of appellee as true and so considering it they could harly understand how it can be argued that $1,200.00 in damages is an excessive sum.

Judgment affirmed.