## W. T. Grant Company v. Taylor.

(Decided March 23, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Malicious Prosecution.—In action for damages for malicious prosecution, evidence held sufficient to authorize a submission to jury of question of want of probable cause and existence of malice.

2. Malicious prosecution.—In action for malicious prosecution, existence of malice is always question of fact for the jury, but malice may be inferred from proof of want of probable cause.

3. Appeal and Error.—New trial will not be granted by appellate court because of excessive damages, except when damages allowed are so obviously disproportionate to injury shown to have been sustained as to warrant belief that jury must have been influenced by passion or prejudice.

4. Appeal and Error.—Ascertainment of damages, in action for malicious prosecution, is a matter for the jury, and the court will not disturb verdict of a properly instructed jury on account of damages allowed being excessive, unless it appears that there was flagrant abuse of discretion, or that jury was actuated by passion or prejudice.

5. Malicious Prosecution.—In action for malicious prosecution, compensatory damages in the sum of $12,500 held so excessive as to amount to flagrant abuse of discretion by jury, in view of fact that only injuries sustained were mental suffering and injury to reputation.

6. Malicious Prosecution.—Exemplary damages may be recovered in action for malicious prosecution, in addition to compensatory damages, when authorized by facts.

7. Corporations.—Corporation, as well as a natural person, may be held liable in punitive damages for injuries inflicted by tortious acts of its employees committed within scope of their authority.

8. Malicious Prosecution.—In determining amount of compensatory damages to be awarded in an action for malicious prosecution, jury may consider any pecuniary loss suffered by plaintiff, any mental or physical suffering endured, or any injury to reputation caused by prosecution.

9. Malicious Prosecution.—Actions for malicious prosecution are not favored in law, since public policy favors the exposure of crime, and large verdicts in such actions should be viewed with more concern than similar verdicts in other cases involving tortious acts.

H. H. HUFFAKER and WALTER P. LINCOLN for appellant.

HUBBARD & HUBBARD and JAMES W. GARRISON for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Mrs. Cora E. Taylor brought this action against the W. T. Grant Company to recover damages for malicious prosecution. There have been three trials. On the first trial the jury returned a verdict in favor of the plaintiff for $6,000, and on the second trial there was a verdict in her favor for $25,000. Both verdicts were set aside by the trial court. It appears that in each instance the verdict was set aside and a new trial granted because the damages were excessive. On the third trial, the jury returned a verdict in favor of the plaintiff for $12,500, and from the judgment entered thereon this appeal is prosecuted.

The appellant insists that the trial court should have directed a verdict in its favor, because the evidence is insufficient to show malice or want of probable cause. It also insists the instructions are erroneous and the verdict is excessive. Other alleged errors, including the manner of selecting the jury and the trial of the case during vacation, are relied on for a reversal, but, in view of our conclusion that a new trial must be granted, and since these alleged errors will, in all probability, not occur on another trial, we deem it unnecessary to discuss them.

The W. T. Grant Company is a corporation operating a store in Louisville, Ky., in which are sold articles of merchandise ranging in value from 25 cents to $1. The proof for appellee, Mrs. Cora E. Taylor, tends to show that on the morning of December 11, 1923, she, accompanied by a friend, Mrs. Kavanaugh, went to the Grant Company's store for the purpose of exchanging two brassieres she had purchased for her daughter about a week or ten days before. Mrs. Taylor, a young married woman, was at the time, the owner of a grocery store on Eighth street near Broadway in Louisville, Ky. After entering the store, they walked to the counter on which the brassieres were kept. At the time Miss Heil,

the salesgirl in charge of the counter, was waiting on another customer.

Mrs. Taylor had carried the brassieres from her home that morning in a Herman Strauss & Son envelop. After standing near the counter a few minutes, Mrs. Taylor approached Miss Heil, and requested her to exchange the articles, as they were too small. Miss Heil asked her for her purchase slip, and Mrs. Taylor informed her that she had misplaced or lost it. She was then informed that it would be necessary for her to go to the office and get an exchange slip before she could exchange the articles. It seems that, when a sale is made, the purchaser is given a purchase slip showing the date, the article purchased, the price paid, and the identification mark of the clerk making the sale, which, if returned with the article purchased within a reasonable time, entitles the purchaser to an exchange of the article for other articles of equal value, or a return of the purchase price. Mrs. Taylor and Mrs. Kavanaugh started to the office in the rear of the store for the purpose of obtaining the exchange slip, but were intercepted on their way by Edward A. Daly, the manager of the store, and W. T. Blanford, the house detective. Daly accused the women of having stolen the articles, and told them that Blandford had seen them take them from the counter. Both Mrs. Taylor and Mrs. Kavanaugh denied they had taken the articles, and explained to Daly that they had brought them from Mrs. Taylor's home that morning for the purpose of exchanging them, and that they had been purchased at the store about a week before. He was shown the Herman Strauss & Son envelope in which the articles had been carried to the store, but he took the two brassieres and the envelope from Mrs. Taylor, and forced both women to accompany him to his office on the second floor, where he again accused them of stealing the articles. They insisted that they were innocent, and Mrs. Taylor requested him to telephone to the Carter Dry Goods Company, where she had placed an order that morning for goods, to the two banks where she did business, to her physician, her attorneys, and a number of other people, and to inquire of them as to her reputation. Daly refused to call any one, and said:

> "That is what they all say, when they get caught. We don't care anything about any of these people; we just happen to have the goods on you."

Mrs. Taylor then requested Daly to call up her home and ask for the woman that worked for her and ask her if she left with anything to exchange that morning. She also requested that he telephone to her husband. He still refused to call any one, and finally wrote out a confession, and told Mrs. Taylor, if she would sign it, he would permit her to go to her home, otherwise she would have to go to jail. The appellee testified that she was detained in Daly's office for more than two hours, and during all that time was compelled to stand outside the railing on the balcony, in full view of people in the store, while Daly plied her with questions, laughed and jeered at her, and insisted that she sign a writing prepared by him, which was to the effect that she had stolen the articles. She refused to sign the confession that had been prepared by him, and Daly called for a police officer, and, upon being advised by the officer that a warrant was necessary, he sent his assistant manager, W. L. Sharrett, to swear out a warrant for Mrs. Taylor. She was then taken to the city hall, and in a short time she got in communication with her husband, who obtained bond for her. She was tried in police court on the following morning on the charge of petit larceny, and was dismissed. On the same day this action was filed.

The proof for the defendant was, in substance, that Blandford, at the time appellee approached the counter on which the brassieres were kept, was standing near by so as not to be observed by any one near the counter. As there was no clerk near, he watched the two women, and he claimed that he saw them handling and examining the brassieres, and saw the appellee take two brassieres from the counter and walk up the aisle to where Miss Heil was standing, and speak to her, and then return to the rear of the store. He ascertained from Miss Heil that appellee wanted to exchange two brassieres she had in her hand for others as they were too small, and that she asked her for her purchase slip, and was told that it was lost, and that she had sent appellee to the exchange desk at the rear to procure an exchange slip. Blandford immediately informed the manager, Daly, of these facts. Daly approached the appellee, and asked what he could do for her, and she replied that she wanted to exchange two brassieres which she had purchased about ten days before, but that she had lost her purchase slip. He asked her if she could identify the girl who sold them to her,

and she indicated Miss Heil as the seller. Miss Heil was asked in appellee's presence if she made the sale, and she replied, "No, how could I? . I only came here to work yesterday." Upon these facts Daly caused the warrant to be issued. He denied that he grilled Mrs. Taylor or insisted that she should sign the confession, or that he jeered or laughed at her at any time, or that she was in his office more than 10 or 15 minutes before the arrival of the officer. He admitted that she requested him to call a number of persons; that she called his attention to the Herman Strauss & Son envelope, in which she claimed to have carried the articles from her home to the store; and that she may have requested him to ·call up her home and ask whether she had left that morning with any articles to exchange. But he stated that he relied solely upon the statements made to him by the house detective, and that no evidence that Mrs. Taylor might have produced would have made any difference as to his actions.

Appellee claims that, by reason of the arrest and treatment which she received at the hands of the manager of appellant's store, she was made ill, and suffered both mentally and physically, and was compelled to dispose of her store. At the time of her arrest, she weighed 132 pounds, and, at the time of the last trial, she had lost 20 pounds, and there is considerable evidence that her physical condition had grown steadily worse. At least two physicians testified that her condition could be reasonably attributed to her arrest and the treatment she received at the hands of appellant's agents and servants.

The evidence was amply sufficient to authorize a submission to the jury of the questions of want of probable cause and the existence of malice. The facts reported to Daly by Blandford, the house detective, were sufficient to warrant the former in making an investigation. But, if the testimony of Mrs. Taylor and Mrs. Kavanaugh was true, the statements made to him by them were of such a nature as to impose upon a reasonably prudent person the duty, under the circumstances, to investigate further, and ascertain whether his belief as to appellee's guilt was well founded. Under the circumstances, a prudent person would have made an investigation of the items of information pointed out to Daly by appellee. Mrs. Taylor testified that she told him "to call at my store and ask for the woman that works for me. Ask her to come to the 'phone, and ask her if Mrs. Taylor left with anything to exchange. See what she will tell

you." To make the inquiry was a simple and easy matter, and it was his duty under the circumstances to make it. He did not categorically deny that he was requested to make this inquiry, but admitted that he relied solely upon the information furnished by Blandford, and that no information that appellee might have furnished him would have altered his belief that she was guilty. There was evidence warranting a belief on the part of the jury that Daly acted without such investigation as a reasonably prudent person would make under similar circumstances.

In Stewart Dry Goods Co. v. Arnold, 158 Ky. 241, 164 S. W. 785, the facts were very similar to those in the instant case, and, in stating the duty of the accuser to investigate items of information pointed out to him, the court said:

"Jones, the superintendent, swore to the affidavit for her arrest. The only facts known to him upon which to base the affidavit were the statements above referred to, made by his private detective, and the gloves which were said to have been taken from the appellee. He says he never heard of the lady before, and therefore could have had no malice against her, but the flimsiness of the charge, and the character of facts supporting it, make it all the more necessary that he should investigate carefully for further facts and make inquiry as to her previous reputation. No further facts being developed, and her good character sustained, malice is to be presumed. We are also of opinion that her arrest was without probable cause, as judged by this record. Appellant may have had cause to suspect that from time to time thieves were guilty of shoplifting, and there may have been good cause to employ private detectives, and watchmen to apprehend such persons, but the question here is whether or not there was probable cause for believing Mrs. Arnold was guilty of such an offense. The mere fact that appellant's employes may have believed that articles of merchandise were from time to time stolen, did not justify them in seeking to make an example of this lady in an effort to deter others from committing the offense. To justify their conduct with reference to this lady, it must appear that she was guilty, or they had probable cause to believe her so. The

evidence discloses beyond any question that she was not guilty, and we are of opinion that there was not only want of probable cause, but absolutely no excuse for her arrest. Of course, we realize the value of aid from private individuals in law enforcement; society demands that every individual render such assistance. The law also aims to protect private property, but it is intended to be used against the guilty only. Private individuals may in good faith, and with probable cause for believing that an offense has been committed, invoke the aid of the law, and if it develops they were laboring under a mistake, they will be excused for any incidental suffering caused to an innocent victim of such circumstances; but there must be probable cause in order to excuse the prosecution."

In an action for malicious prosecution, the existence of malice is always a question of fact for the jury, but malice may be inferred from proof of the want of probable cause. Emler v. Fox, 172 Ky. 290, 189 S. W. 469; J. B. Colt Co. v. Grubbs, 206 Ky. 809, 268 S. W. 817.

The court in its instructions very clearly and concisely presented the questions in issue. The only serious complaint of the instructions made by appellant is the alleged failure of the court to tell the jury what facts constituted probable cause. The instruction complained of substantially conformed to the instruction on probable cause directed to be given in Ahrens & Ott, Mfg. Co. v. Hoeher, 106 Ky. 692, 51 S. W. 194, 21 Ky. Law Rep. 299.

The only question left to be determined is whether or not the verdict is excessive. We have frequently written that a new trial will be granted because of excessive damages only when the damages allowed are so obviously disproportionate to the injury shown to have been sustained as to warrant the belief that the jury must have been influenced by passion or prejudice. In actions for malicious prosecution, as in other actions, the ascertainment of the damages is a matter for the jury, and the court will not disturb the verdict of a properly instructed jury on account of the damages allowed being excessive, unless it appears that there is a flagrant abuse of discretion by the jury, or that it was actuated by passion or prejudice. Ross v. Kohler, 163 Ky. 583, 174 S. W. 36, L. R. A. 1915D, 621. A careful reading of the record in this case convinces us that the verdict is excessive; the

damages awarded being so disproportionate to the injuries proven to have been sustained as to amount to a flagrant abuse of discretion by the jury, and to warrant the belief that it must have been misled by some mistaken view of the merits of the case.

The instructions limited the jury to compensatory damages. The plaintiff offered no instruction on punitive damages, and no such instruction was given. Exemplary damages may be recovered in an action for malicious prosecution, in addition to compensatory damages, when authorized by the facts. Proctor Coal Co. v. Moses, 40 S. W. 681, 19 Ky. Law Rep. 419. And a corporation, as well as a natural person, may be held liable in punitive damages for injuries inflicted by the tortious acts of its employees committed within the scope of their authority. Memphis & Cincinnati Packet Co. v. Nagel, 97 Ky. 9, 29 S. W. 743, 16 Ky. Law Rep. 748.

If the testimony introduced in behalf of the plaintiff was true, then the conduct of Daly, manager of appellant's store, was cruel and oppressive, and showed a reckless disregard of plaintiff's rights. An instruction on punitive damages would have been entirely proper. Whether or not the damages awarded would be excessive if punitive damages were included, we need not determine. In determining the amount of compensatory damages to be awarded, the jury was authorized in considering any pecuniary loss suffered by plaintiff, any mental or physical suffering endured by her, or any injury to her reputation caused by the prosecution. No pecuniary loss of moment is disclosed by the evidence, although it was alleged in the petition that she was compelled to dispose of her store as a result of the arrest. There is no evidence tending to show that she was compelled to dispose of her store for this reason, although there is some intimation that it was sold because she was physically unable to longer conduct the business. The evidence shows that plaintiff submitted to an operation in January, 1923, with the understanding that, if this operation was not entirely successful, it was only preliminary to a major operation to be performed later. At the time of the last trial in July, 1926, plaintiff had submitted to no further operation, and she was at that time in ill health. She had lost 20 pounds in weight since the date of her arrest, and was in a highly nervous condition.

Two physicians testified that her physical condition at the time of the trial could have resulted from the

arrest and the treatment she claimed to have received
from appellant's agents. It is clear, however, from the
testimony of Dr. Grigsby, the surgeon who performed
the operation in January, 1923, that plaintiff's physical
condition at the time of the last trial was almost entirely,
if not altogether, due to a diseased condition that had
existed for many years prior to the prosecution.

While there is no measure of compensatory damages
in a case of this kind, yet the amount may be so large as
to exceed any compensation that a jury could reasonably
allow under the circumstances of the case. Regarded as
compensatory merely, the damages awarded in this case
are manifestly excessive, and can only be accounted for
upon the theory that the jury gave to the plaintiff ex-
emplary damages, or awarded a large portion of the
damages for physical suffering under the belief that her
physical condition at the time of the trial resulted solely
from the prosecution. Exemplary damages were un-
authorized under the instructions, and, while there was
sufficient evidence to authorize a submission of the ques-
tion of physical suffering, it is clear that plaintiff's phy-
sical condition at the time of the trial was chiefly due to
a pre-existing disease.

The only injuries sustained by plaintiff justifying
substantial damages were mental suffering and injury to
her reputation. The prosecution in this case was given
considerable publicity, but numerous witnesses testified
that plaintiff's reputation was good both before and
after her arrest, and it is apparent that the opinion of
her friends and acquaintances as to her good character
was not affected by the charges against her.

Compensation for mental suffering and injury to
reputation is difficult to estimate, and cases from this
and other jurisdictions, in which the measure of damages
for such injuries is considered, are of little assistance,
since the facts and circumstances in no two cases are
alike. Collections of authorities in which excessiveness
and inadequacy of verdicts in actions for malicious pros-
ecution are considered may be found in 40 A. L. R. 310;
47 A. L. R. 312; and 38 C. J. 450. The largest verdict
that has been sustained in this state in a case of mali-
cious prosecution was one for $3,000. . H. S. Leyman Co.
v. Short, 214 Ky. 272, 283 S. W. 96. In that case the
plaintiff was arrested on a charge of larceny, placed in
jail, where he became covered with vermin, prevented
from seeing his wife, who was seriously ill, and caused to

lose $1,500 in money. We do not mean to be understood as holding that a larger verdict would not be sustained if warranted by the facts, but we are of opinion that the actual damages shown in this case do not warrant a verdict for $12,500. Actions for malicious prosecution are not favored in law since public policy favors the exposure of crime, and large verdicts in such actions should be viewed with more concern than similar verdicts in other cases involving tortious acts. J. B. Colt Co. v. Grubbs, supra; I. C. R. R. Co. v. Anderson, 206 Ky. 600, 268 S. W. 311; Bazzell v. I. C. R. R. Co., 203 Ky. 626, 262 S. W. 966.

Wherefore the judgment is reversed, with directions to grant appellant a new trial and for further proceedings in accordance herewith.

The whole court sitting.