[No. 10098.   Department One.   March 7, 1912.]

JOHN D. BAER, *Respondent*, v. DAVID CHAMBERS, *Appellant*.[1]

MALICIOUS PROSECUTION—REASONABLE CAUSE—ADVICE OF PROSECUTING ATTORNEY—QUESTION FOR JURY. In an action for malicious prosecution the court cannot decide, as a matter of law, that defendant was justified by the advice of the prosecuting attorney, where there was evidence warranting the jury in concluding that the defendant did not fully and truthfully communicate to the prosecuting attorney all the material facts within his knowledge bearing upon the plaintiff's guilt, but without excuse withheld facts from which the prosecuting attorney would have advised against making the charge; the question of reasonable cause for the prosecution being in such case a question for the jury.

SAME—DAMAGES—EVIDENCE—ADMISSIBILITY—WEALTH OF DEFENDANT. In an action for malicious prosecution, evidence of the finan-

[1]Reported in 121 Pac. 843.

cial worth of the defendant is inadmissible in this state, where punitive damages are not recoverable.

SAME—EVIDENCE—ADMISSIBILITY—NEWSPAPER ACCOUNTS. In an action for malicious prosecution, plain newspaper accounts, without comment, of the prosecution and arrest of the plaintiff are admissible in evidence; but where defendant was not responsible for such articles, all matters therein save facts that could be ascertained from the complaint charging the offense and the proceedings had thereon are irrelevant and inadmissible where they would tend to prejudice the defendant before the jury.

SAME—DAMAGES—PROBABLE RESULT OF ARREST — EVIDENCE — ADMISSIBILITY. In an action for malicious prosecution, the amount of the recovery cannot be enhanced by evidence that the plaintiff caught cold while in jail, that not being the probable result of his arrest, where there was no evidence showing the bad or unhealthful condition of the jail; although evidence of the condition of the jail is admissible.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered July 3, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for malicious prosecution. Reversed.

*Bigelow & Manier*, for appellant.

*E. N. Steele* and *Troy & Sturdevant*, for respondent.

PARKER, J.—The plaintiff commenced this action in the superior court for Thurston county to recover damages which he alleges resulted from the malicious prosecution of a criminal action against him by the defendant. A trial before the court and a jury resulted in a verdict and judgment against the defendant for the sum of $850, from which he has appealed.

In August, 1910, appellant made complaint in writing under oath before a justice of the peace, for Thurston county, charging respondent with the crime of feloniously assaulting him. A warrant of arrest was thereupon issued accordingly, and placed in the hands of the sheriff of Thurston county, who arrested respondent in obedience thereto, and held him in custody in the county jail for the period of three days. A

preliminary hearing upon this criminal charge was then held
before the justice as a committing magistrate, when respond-
ent was discharged and his further prosecution abandoned.

It is first contended in behalf of appellant that the trial
court erred in denying his motion for a directed verdict in
his favor. The only argument made in support of this mo-
tion which we deem it necessary to notice is that the facts
proven were such as to call for a decision of the court, as a
matter of law, that appellant had, prior to the making of
the complaint before the justice, fully and fairly stated to the
prosecuting attorney of Thurston county all of the facts
within his knowledge bearing upon the question of respond-
ent's guilt, and had thereupon been advised by the prosecut-
ing attorney that there was cause for believing respondent
guilty, and to warrant his prosecution for the crime which
was thereafter charged against him by appellant. It is con-
ceded that appellant communicated certain facts to the prose-
cuting attorney, which standing alone would tend strongly to
show respondent's guilt, and that the prosecuting attorney
based his advice solely upon the facts so communicated. There
were, however, other facts which the jury might well believe
from the evidence in this case were within the knowledge of
appellant at the time he sought the advice of the prosecuting
attorney and made complaint before the justice, which facts
tended to show that respondent at the time of the alleged
assault was defending his own home from intrusion by ap-
pellant, and which facts if true would constitute a perfect
defense to the charge made by appellant against respondent.
Indeed, it appears by the prosecuting attorney's own testi-
mony that he would have advised appellant against the prose-
cution had these facts been communicated to him by appel-
lant. Counsel for appellant rely upon the decisions of this
court in *Simmons v. Gardner*, 46 Wash. 282, 89 Pac. 887, in
support of their contention that the question of reasonable
cause should have been decided, as a matter of law, in favor
of the appellant by the court, because of the advice of the

prosecuting attorney. In that case, however, there seems to have been no question but that all of the facts known to the prosecuting witness were communicated to the prosecuting attorney, who advised the prosecution therein involved. Touching the question of when such communication to the prosecuting attorney, and his advice thereon, may enable the court in a malicious prosecution case to determine the question of probable cause, as a matter of law, the court, at page 287, said:

"It is undoubtedly the law that if any issue of fact exists, under all the evidence, as to whether the appellants did fully and truthfully communicate to the attorneys consulted all the facts and circumstances within their knowledge, then such issue of fact must be submitted to the jury with proper instructions from the court as to what will constitute probable cause, and the existence or nonexistence of probable cause must then be determined by the jury. *Voss v. Bender*, 32 Wash. 566, 73 Pac. 697. On the other hand, if it appears that the statements as to the attorneys were truthful, full, and complete, giving all material facts and circumstances within the knowledge or information of appellants, then the existence or nonexistence of probable cause becomes a question of law for the court, which should not be submitted to the jury."

Now in the case before us, it is neither admitted nor proven, beyond controversy, that appellant fully and truthfully communicated all the facts within his knowledge to the prosecuting attorney bearing upon the question of respondent's guilt of the crime for which appellant sought to have him prosecuted. But, on the contrary, there is ample evidence to warrant the jury in believing that appellant withheld from the prosecuting attorney, without excuse, material facts which would have shown respondent's innocence of the charge. We think it follows that the question of reasonable cause could not have been determined by the court, as a matter of law, because that question depended upon facts in dispute, and was therefore for the jury's determination under proper instructions.

Appellant was called as a witness in behalf of respondent, and over the objections of his counsel, was required to give testimony relative to the amount of property possessed by him, resulting in the jury learning that he was a man of considerable means. This is assigned as error prejudicial to appellant. The decisions of the courts upon the question of the admissibility of evidence of this nature, in this class of cases, are apparently in serious conflict. Such evidence seems to be held admissible in most of the states where punitive or exemplary damages are recoverable when resulting from gross negligence or malicious acts; that doctrine being generally assigned as a ground for admitting such evidence. In 26 Cyc. 103, the general rule is stated in harmony with such authorities as follows:

"The action of malicious prosecution being one in which exemplary damages are allowable, evidence of defendant's pecuniary circumstances may be received."

This class of evidence, however, is not admissible in all jurisdictions where punitive damages are recoverable. In *Southern Car & Foundry Co. v. Adams*, 131 Ala. 147, 32 South. 503, the supreme court of that state, having under consideration the admissibility of evidence of this nature in a malicious prosecution action, makes some very pertinent observations at page 159, as follows:

"The question is not new in this court. It arose, apparently, for the first time, in the case of *Ware v. Cartledge*, 24 Ala. 622, where it was held that evidence of wealth was not admissible for the plaintiff in an action of slander, and it is admitted, that the same rule, if sound, is applicable to a case of malicious prosecution. The court in that case say: 'We are aware that in many actions for torts, in which vindictive damages are allowed to be given by the jury, proof of the value of defendant's estate has been allowed to go to the jury, both in England and the United States, but this rule is by no means universal. Conflicting authorities on the subject are to be found in English and American books. . . . It would seem, that if such proof is allowable in order to aggravate the damages in such cases, when the defendant is

wealthy, common justice would require, that a converse rule should prevail in the case of poor defendants, and they should be allowed to give their poverty in evidence to mitigate the damages. Yet nearly all the books declare, that this is not the case, and common sense revolts at the idea of its adoption. For, sad would be the fate of that country, whose laws conceded to the insolvent bully, seducer, or slanderer, the privilege of perpetrating his wrongs, with comparative impunity, under the assurance that, when sued for his practices, the damages would be graduated to his present ability to pay them, and consequently would be merely nominal. No sound principle of law tolerates such a practice."

See, also, *Brown v. Smallwood*, 86 App. Div. 76, 83 N. Y. Supp. 415. It is worthy of note that in both of those states such evidence is held inadmissible, even though punitive damages are there recoverable. No decision has come to our attention holding such evidence admissible in states where the doctrine of punitive damages does not prevail. This court, in the early case of *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45, 25 Pac. 1072, 26 Am. St. 842, 11 L. R. A. 689, repudiated the doctrine of punitive damages as unsound in principle. The views there expressed have been consistently adhered to ever since. *Woodhouse v. Powles*, 43 Wash. 617, 86 Pac. 1063, 117 Am. St. 1079, 8 L. R. A. (N. S.) 783. This seems to remove the only basis upon which such evidence could be rendered admissible. It seems to us inconceivable that the amount of respondent's damages should be measured by the financial worth of appellant, when respondent has no right to punitive damages. We conclude that the admission of this testimony was such prejudicial error as entitles appellant to a new trial. This renders it necessary to notice some other assigned errors involving questions which are likely to arise upon a new trial.

Counsel for respondent offered in evidence several copies of newspapers published at Olympia, and of general circulation in Thurston county, containing articles purporting to give accounts of the criminal charge made against respondent

and his arrest at the instance of appellant. These articles were admitted entire in evidence, over objections of counsel for appellant, and their admission is now claimed to be prejudicial error. The rule seems to be well established that newspaper articles containing plain accounts, without comment, of the prosecution and arrest of the plaintiff, may be admitted in evidence in an action in which he seeks damages for such malicious prosecution. This view is well stated by the supreme court of Michigan in *Filer v. Smith*, 96 Mich. 347, 355, 55 N. W. 999, 35 Am. St. 603, as follows:

"The fact of the publication in a newspaper of the fact of plaintiff's arrest was set up in the declaration; and as tending to show the publicity given to that fact, and consequent injury, the publication should have been admitted. It was a plain, unvarnished account. Its publication was privileged. The general rule of law is that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately brought about by intervening agents, provided such agents were set in motion by the primary wrongdoer, or provided those acts causing the damage were the necessary or legal and natural consequence of the wrongful act. The publication was such a natural, usual, and ordinary consequence of defendant's act that it must be deemed to have been contemplated."

See, also, *Minneapolis Threshing Mach. Co. v. Regier*, 51 Neb. 402, 70 N. W. 934; *Grimes v. Greenblatt*, 47 Colo. 495, 107 Pac. 1111.

Now in the case before us, there is no evidence indicating that appellant was responsible for any of these publications, save in so far as they stated facts which could be ascertained from the complaint made before the justice charging the respondent with the crime, the warrant of arrest, and his arrest thereunder. In view of these facts, anything else contained in these publications, we think, would be irrelevant, though such additional matters might possibly be rendered relevant if shown to have been published at appellant's instance. Let us now notice if there were such other matters contained in

the articles as should have been excluded. There were seven different articles so published, some of them were of considerable length and contained accounts with some details of what purported to be a somewhat serious controversy existing between appellant and respondent arising out of a lease of appellant's farm to respondent and appellant's efforts to regain possession thereof. They contained some statements which might be construed to point to respondent's guilt, in addition to the statements of facts which could be learned only from the proceedings before the justice. Such statements would, of course, tend to prejudice appellant's rights upon the trial, since they reflected somewhat upon respondent's character, and yet we have seen that appellant was not proved to be responsible for their publication. It also appeared from these articles that, after the issuance of the warrant of arrest against the respondent, and after he knew of its issuance, appellant caused delay in the making of respondent's arrest, apparently with a view of coercing respondent into a settlement of their differences. These statements in the articles would tend to create in the mind of the reader an impression that appellant was using the criminal process of the courts to right his private wrongs. Such facts going before the jury were prejudicial to appellant, and such statements in these articles were of course only hearsay.

In *Fletcher v. Chicago & N. W. R. Co.*, 109 Mich. 363, 67 N. W. 330, the supreme court of that state, referring to a newspaper article containing prejudicial matters not admissible in evidence, though some of the facts therein stated may have been admissible, at page 368, observed:

"If such an article be so framed that it cannot be read without introducing the objectionable matter, it must be excluded; but it would be competent to have it appear before the jury that the fact of his arrest was published in the paper."

While this statement clearly indicates that irrelevant matter contained in such publications must be excluded, that rule,

however, we think will not require the exclusion of all the statements found in these articles. For instance, in one of them we find this statement:

"A warrant for the arrest of John D. Baer was issued yesterday afternoon on the complaint of David Chambers by Judge Milton Giles. Baer is charged with assault with a deadly weapon."

We do not quote this as being the only statement contained in these articles which is admissible in evidence, but to show the nature of those which are admissible. This and similar statements are, of course, such as would naturally be expected to appear in the public press as items of news concerning the prosecution of respondent for the crime charged, and are therefore such as appellant may be held responsible for. While the learned trial court instructed the jury that these articles "are not to be considered by you except to show the fact that plaintiff's arrest is given publicity," he did not exclude from the consideration of the jury any particular portions of the articles nor any particular statements therein. In view of the manifest prejudicial effect against appellant of the objectionable portions of the articles, we think the error of their admission was not cured by the court's instruction, but that all statements contained therein other than those of the character indicated should have been excluded from evidence. This could have been easily accomplished by causing the unobjectionable statements to be read to the jury. They would thereby have gained all the information material to their inquiry, that is, the fact that respondent's prosecution and arrest had been given publication. Of course, the extent of that publication could be shown by reading the unobjectionable statements from all the papers in which they appeared.

Over the objection of counsel for appellant, respondent was permitted to testify relative to the condition of the county jail in which he was detained while awaiting preliminary examination, and that he caught cold therein, as follows:

"Q. Now what effect did your incarceration in the jail have upon you Mr. Baer? A. Well it made me sick and heartbroken to think of the idea that I lived fifty-six years or over and never got arrested or in the calaboose and then be arrested after I was so old. Fifty-six years old, being arrested and put in jail it humiliated me so I was heartbroken and didn't know hardly what to do. It made me sick with the worry and catch cold, of course, that was a concrete building and concrete buildings are damp and of course I caught cold. Two nights. A cold upon a cold and that wouldn't have hurt me so much as the idea of being humiliated and disgraced myself and my family. . . . Q. You say that you caught cold while you were there, what effect did that have if any upon your physical condition? . . . A. Well it seemed to stay right with me, caused a pain in my head and that has been staying with me ever since and I have been unable to get rid of it."

It is insisted that this was erroneous, since appellant had no control over the officers nor over the jail, and was in no way responsible for the treatment received by respondent while under arrest. Assuming that the prosecution was malicious and without probable cause, it seems clear that appellant would be liable for all damages which might be expected to ordinarily arise as a result of his arrest and imprisonment. This is only the general rule of damages applicable to all cases of tort. The difficulty here is to determine what is the treatment likely to be expected to be accorded to one under arrest as respondent was. What are the probable resulting damages of such arrest and detention? The great weight of authority appears to be that a plaintiff in an action for a malicious prosecution or false imprisonment may show the condition of the jail where he was confined and his treatment therein. *Grimes v. Greenblatt, supra;* 19 Am. & Eng. Ann. Cases, 608. See, also, note in latter volume at page 614. We apprehend, however, that this rule would not permit respondent to enhance the amount of his recovery against appellant by showing such ill treatment heaped upon him while in prison as consisted of acts clearly unlawful on

the part of the county and its officers. Such treatment is not the natural or probable consequences to be expected to result from his prosecution and arrest. Now in this case, the condition of the jail is not shown to be so bad and unhealthful that it can be said to be unlawful to confine persons therein while under arrest. We conclude, therefore, that this evidence was admissible in so far as it went to show the condition of the jail. The most serious objection to this evidence, however, relates to that part which shows that respondent caught cold while in jail. This affliction of respondent was not a result of his imprisonment which can be said to be a probable expected consequence to flow therefrom; hence, we think, appellant was not responsible for respondent's catching cold, and the admission of that fact in evidence was erroneous. If this were the only error calling for a new trial, we would hardly be inclined to reverse the cause, for the reason that respondent's own evidence indicates that he regards his catching cold of such slight injury that its influence upon the jury in measuring damages must have been infinitesimal. In view, however, of what may occur upon a new trial, we deem it necessary to say this much on the subject. Other errors are assigned which would probably call for discussion if we were not awarding a new trial, but in view of that fact, we think we need not say more.

The judgment is reversed, with instructions to the trial court to award appellant a new trial.

DUNBAR, C. J., CROW, GOSE, and CHADWICK, JJ., concur.