**VANCOUVER BOOK & STATIONERY CO.,
Inc., v. L. C. SMITH & CORONA TYPE-
WRITERS, Inc., et al.**

No. 10215.

Circuit Court of Appeals, Ninth Circuit.

Nov. 1, 1943.

—◆—

Reuben G. Lenske, of Portland, Or., for appellant.

Maguire, Shields, Morrison & Biggs, Robert F. Maguire, Randall B. Kester, E.

A. Boyrie, and Lester L. Ahlgrim, all of Portland, Or., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a suit for damages for the malicious prosecution of civil actions. The trial below resulted in the direction of a verdict for the defendants.

In 1936 J. A. Hill and W. P. Phillips organized appellant, Vancouver Book & Stationery Co., Inc., to take over the business of a small retail book and stationery store in Vancouver, Washington. Hill undertook to supply not to exceed $5,000 for the venture and Phillips was to have full charge of the business. Each was to receive half the stock in the corporation, but it appears that no stock was ever subscribed for or issued, no stockholders' meeting ever held, and no corporate officers or directors elected. Hill ultimately became dissatisfied with Phillips' management of the business, and in August of 1939 he caused an audit to be made from which he learned that he had put $642 more into the Company than he had agreed to invest; and he was given a demand note for that amount executed on behalf of the Stationery Company by Phillips.

A few days later Hill sued on the note and attached the business, and the attaching officer placed a keeper in charge. Hill's purpose in taking this action, as he later explained it, was to get rid of Phillips. Following the attachment the state of Washington, as well as the county treasurer of the county in which the store was located, levied upon the property for unpaid taxes, and tax sale was advertised by the State to take place on September 12, 1939. Meanwhile, the sheriff's keeper remained in charge and continued for the time being to conduct the business on behalf both of Hill and the Tax Commission.

Immediately prior to the tax sale appellee Adjustment Bureau of Portland filed a complaint in a Washington state court and obtained an order temporarily restraining the sale until creditors of the Stationery Company might have opportunity to protect their interests. The sheriff's keeper in charge thereupon closed down the business. On September 13 Phillips delivered to the Adjustment Bureau a statement in writing acknowledging the Stationery Company's inability to pay its debts and its willingness to be adjudged a bankrupt. Phillips signed the statement as secretary and manager. On September 14 appellees, all of them creditors of the Stationery Company, filed a petition in the federal court for the western district of Washington, based on this admission, asking that the Company be adjudged a bankrupt. On September 30 appellees filed a supplemental complaint in the state court and obtained an order temporarily restraining an execution sale which had been advertised following a default judgment obtained by Hill in his suit on the note. On the same date a second petition in bankruptcy was filed by appellees against the Stationery Company. In this petition the same written admission was set up, and it was also alleged that the debtor, while insolvent, had permitted a creditor to obtain a lien on its property through legal proceedings and had failed to vacate or discharge it within thirty days, and further, that the lien had not been vacated or discharged within five days before the date set for the sale of the property. These allegations had reference to the Hill attachment and execution sale.

The state court declined to continue the temporary restraining orders upon their lapse, and appellees thereupon petitioned the bankruptcy court to restrain the sales and asked for the appointment of a receiver. These petitions were granted. In February 1940 the bankruptcy court, on motion of the petitioners, ordered a dismissal of the first petition in bankruptcy. The state of Washington then sought a discharge of the restraining order, and on stipulation of all the parties a sale of the Stationery Company's assets was effected by the State. This sale realized $1,277, of which amount neither Hill nor any of the appellees got anything.

The Stationery Company, through Hill, answered the second petition in bankruptcy, denying the allegations thereof and alleging that the written admission was of no effect since its execution had not been authorized by the corporate directors or stockholders. Upon trial of the second petition a jury found, on conflicting evidence, that the Stationery Company was not insolvent when the petition was filed, and the bankruptcy proceeding was dismissed. Thereupon the Stationery Company com-

menced this suit. The nubbin of its complaint appears to be that appellees maliciously conspired to destroy its business by means of these various proceedings. The question for us to determine is whether, on the showing made, the court was in error in directing a verdict for the defendants.

■ Since the tort, if any, was committed in the state of Washington, the law of that state is determinative both of the existence of a legal injury and of the character and measure of the damages recoverable.[1] The Washington courts, in conformity with the general thought on the subject, look with disfavor upon malicious prosecution suits. Peasley v. Puget Sound Tug & Barge Co., 13 Wash.2d 485, 496, 125 P.2d 681; Terusaki v. Matsumi, 106 Wash. 538, 541, 180 P. 468. To recover in an action for malicious prosecution it must be shown that there was want of probable cause for the institution or continuance of the prosecution; that the prosecution was maliciously instituted or conducted; that it terminated unsuccessfully for the complaining party on its merits; and that it resulted in damage to the person prosecuted. Terusaki v. Matsumi, supra. It is further the rule in Washington that the commencement of a civil suit, even though malicious and without probable cause, does not give rise to a cause of action "when there had been no arrest of the person or seizure of the property of the defendant, and no special injury sustained which would not necessarily result in all prosecutions for like causes of action." Abbott v. Thorne, 34 Wash. 692, 696, 76 P. 302, 303, 65 L.R.A. 826, 101 Am.St.Rep. 1021; Manhattan Quality Clothes v. Cable, 154 Wash. 654, 283 P. 460.

■ We look first at the restraining orders obtained in the state court. These were not directed toward appellant but against certain of its creditors. Their sole effect was temporarily to prevent a forced sale of appellant's assets, and such was their purpose. It is not conceivable that they could have injured appellant in any way. Besides, the proceedings in which they were obtained did not terminate unsuccessfully for the appellees.

■ If appellant has a cause of action it arose out of the institution of the bankruptcy proceedings. Because from the time of the filing of a petition in bankruptcy the estate is regarded as in custodia legis, Slattery v. Dillon, 9 Cir., 17 F.2d 347, 348, it has sometimes been held in cases of this kind that an involuntary petition satisfies the requirements of special damage and the seizure of property, 34 Am.Jur. § 17, p. 711. But here the assets were already sequestered as the result of creditors' levies and the property continued in custody of the sheriff until sold by the state. The receiver appointed by the bankruptcy court at no time took possession of the assets or business. In the circumstances, we think the petitions did not effect a seizure within the meaning of the rule to which we have referred. Cf. In re J. Ito Terusaki, D.C. Wash., 238 F. 934.

■ In any event it is plain that there was probable cause for the institution of the proceedings. In addition to the levies and the admission of insolvency, it was shown without dispute that, prior to the filing of the petitions, appellant was in default in its rent and had given up the better part of its store space, that its sales had been declining for more than a year, that it had been for some time unable to meet its bills currently, and had for months been on a c.o.d. basis. The rule in Washington is that where there is no dispute as to the facts the question of the existence of probable cause is one of law for the court.[2] We may add that there was no affirmative showing of malice. While it is generally held that an inference of malice arises upon a showing of want of probable cause, it appears to be the rule in Washington that a mere prima facie showing of want of probable cause, such as the unfavorable termination of the original proceeding, does not sustain the inference. Ton v. Stetson, 43 Wash. 471, 86 P. 668, 10 Ann. Cas. 369; Waring v. Hudspeth, 1913, 75

---

[1] Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170; Loucks v. Standard Oil Co., 1918, 224 N.Y. 99, 120 N.E. 198; Restatement, Conflict of Laws, §§ 384, 412; 11 Am.Jur. 490, 497; 12 C.J. 452.

[2] Simmons v. Gardner, 1907, 46 Wash. 282, 89 P. 887, L.R.A.1915D, 16; Anderson v. Seattle Lighting Co., 1912, 71 Wash. 155, 127 P. 1108; Hightower v. Union Savings & Trust Co., 1915, 88 Wash. 179, 152 P. 1015, Ann.Cas.1918A, 489; Huf v. Hague, 1933, 171 Wash. 302, 17 P.2d 844; Pallett v. Thompkins, 1941, 10 Wash.2d 697, 118 P.2d 190.

Wash. 534, 135 P. 222; Saunders v. First Nat. Bank, 1915, 85 Wash. 125, 147 P. 894.

Affirmed.