## Peel v. Bramlett.

Dec. 8. 1943.

As Modified on Denial of Rehearing

June 23, 1944.

Jouett & Metcalf, Harry B. Miller and J. Smith Hays, Jr. for appellant.

D. L. Pendleton and Rodney Haggard for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This is an appeal from a judgment for the sum.of $7,500 recovered by appellee against appellant in the Clark circuit court for malicious prosecution. The facts

out of which the action arose are, in substance, as follows:

In the year 1938, appellant was engaged in the operation of one or more dry cleaning establishments in Lexington, Kentucky, and in the early part of that year he started a pressing and dry cleaning business in Winchester, Kentucky, and employed appellee, who lived in Winchester, as manager of the Winchester plant and placed her in charge of it. She collected all monies and made all deposits in a Winchester bank and paid the expenses of the operation of the business, including wages, salaries, etc., and drew all the checks on the same except a few which were drawn by appellant. A cash book and stubs of the check book were practically the only records kept in the transaction of the business.

In March, 1941, appellant drew a check upon the Winchester bank account for $1,000. The check was dated as of March 26 but appellee contends that it was in reality drawn on March 3 and dated as of March 26, and appellant contends that it was written or drawn on March 26 as shown on its face. The check book stubs kept by appellee showed a balance in the bank at that time of $1,622.96. Appellant notified appellee by telephone that he had drawn the $1,000 check on the Winchester account and told her, in substance, to go out and get some additional business so she could put some money in the bank to replenish the account which had been greatly reduced by the writing of the $1,000 check. Appellee went to Lexington and discussed the matter with appellant and informed him that there were not sufficient funds on deposit in the Winchester bank to pay the $1,000 check. Appellant employed an accountant or auditor to audit the accounts of the Winchester business and found, according to that audit, a shortage of approximately $1,300. He discussed the matter with his local attorney, Mr. Miller of Lexington, and also on the advice of Mr. Miller he discussed the matter with J. Smith Hays, Jr., county attorney of Clark county, and according to his testimony he informed the county attorney of all the facts relative to the matter and upon the advice of the county attorney a warrant was procured from the county judge of Clark county charging appellee with the conversion or embezzlement of $1,328 of appellant's money. Appellee was arrested on the warrant and arraigned before the county judge of Clark county for

examining trial and the court required appellee to execute a bond to answer to any indictment which might be returned by the grand jury, and she executed bond in the sum of $500. At the September, 1941, term of the Clark circuit court the grand jury returned two indictments against appellee, one charging her with the conversion of $140 of appellant's money on December 10, 1940, and another for the conversion of $150 on or about December 24, 1940. At a subsequent term of the circuit court appellee was tried upon one of the indictments which resulted in a jury verdict of acquittal, and the other one was dismissed on motion of the Commonwealth. She then brought this action, charging in her petition that appellant wilfully, maliciously and without probable cause, instituted and brought about the warrant and indictments referred to and prosecuted the same with the result stated above, and prayed to recover the sum of $15,000 damages, plus $150 attorney fees which she expended in her defense in the criminal prosecutions. Appellant filed his answer in which he denied that the prosecution was malicious and without probable cause. By subsequent pleadings issue joined and upon a trial of the action the jury returned a verdict in favor of appellee for the sum of $7,500. Appellant urges reversal of the judgment upon the grounds that the court admitted incompetent evidence; the verdict and judgment thereon is excessive, and the instructions were erroneous.

Since the action must be reversed upon a ground other than the evidence, it becomes unnecessary for us to give a detailed resume of the evidence. We may, however, notice some of the salient points. According to appellant's version of the story, when he called appellee on the telephone and told her that he had drawn the $1,000 check on the Winchester account she insisted on coming to Lexington and talk the matter over with him in person and when she came to his place of business in Lexington she would not discuss the matter at the office but insisted that they drive out on a country road, which they did, and she told him that there was not sufficient funds on deposit in the Winchester bank to pay the $1,000 check and admitted that she was short in her account, saying that she did not know what she had done with the money, and asked him to give her a chance to make up the shortage, and discussed borrowing the money from a Winchester bank to make good the short-

age. Appellee admitted that she went to Lexington on the occasion stated by appellant and that they drove out on a country road and discussed the matter, and said that the reason she desired to talk to him alone was because he knew at the time the check was written that there was not a sufficient amount of money in the bank to pay it. She admitted that the stub of the check book showed a balance of $1,622.96 at the time the $1,000 check referred to was written, and admitted that this was far in excess of the money actually on deposit but insisted that appellant knew that the balance indicated on the stub book was false entries and did not reflect the actual amount of money on deposit, and admitted that her entries and records pertaining to the financial affairs of the business were falsified, but insisted that it was done at the request of appellant and he told her not to deposit all the money in the bank because the income tax collector would be around, meaning, presumably, that it was for the purpose of evading income taxes. She said she kept a large portion of the funds in a box in the office and only made deposits occasionally, perhaps to meet the payment of checks drawn on the account. She also testified that she found a note which some one had put under the door, asking some questions about the money, and said that some one broke into the office or store, but she did not state whether or not she examined the box in which she kept the money in the store, or whether or not any money was missing. Appellant insists that her evidence relating to the note and the breaking into the office was incompetent. We think that the evidence was competent for the purpose of showing that the shortage, if any, might have been brought about by theft rather than by conversion by appellee and was properly admitted to the jury for what it might be worth for that purpose. She further stated that appellant frequently came to the place of business and took money from the cash register without leaving any receipt, and no record was kept showing the amount he took. Other alleged incompetent evidence is that the court permitted appellee to testify that appellant had made improper advances toward her, asking her for dates, and offered to buy her a fur coat. We think this evidence was competent since it might have some bearing on the question of malice or motive on the part of appellant for the prosecution. Other alleged incompetent evidence complained of is that the court permitted evidence to go to

the jury regarding news items published in The Winchester Sun, a local newspaper, giving an account of appellee's arrest and her trial. We think this evidence was competent to the extent of showing only the publication of appellee's arrest and prosecution, but without comment or detail, since it might have tended to call the attention of the public to the charges against appellee and gave the charges a wider publication than it otherwise might have had, which fact the jury had the right to take into consideration in fixing the damages sustained by appellee by reason of the prosecutions.

In annotations 37 A. L. R. 658 will be found a thorough discussion of this subject matter, and it is there stated that as a general rule, a publication containing an account of the prosecution of the plaintiff, without comment, is admissible in an action to recover damages for malicious prosecution. Publication of an arrest in a newspaper is a probable consequence of an arrest and such publication may be shown in evidence to aid the jury in estimating the damages. Grimes v. Greenblatt, 47 Colo. 495, 107 P. 1111, 19 Ann. Cas. 608. However, in the present case Miss Bramlett, the appellee, was permitted to read to the jury from the newspaper article not only the account of the charges and prosecution against her, but also certain comments and details, one sentence being: ''A member of the jury said not guilty verdict was reached immediately,'' and also made reference to a number of character witnesses introduced in her behalf. The court should not have permitted the witness to have read to the jury from the newspaper publication further than to show that she was charged with the offense and prosecuted therefor. All comments and details were improper and prejudicial.

Appellee was asked on cross-examination if she at any time ever made any statement even in the trial of the indictment in the circuit court that appellant asked her for dates or that the store had been broken into, and she answered: ''No, I didn't that I recall.'' She further said that when she discovered the store had been broken into she called or notified the police department and ''one of them,'' but she did not remember which one, came to the store and looked around but made no investigation, but she did not introduce any policeman as a witness nor claim that she made any effort to ascer-

tain which one of the policemen came to the premises at the time mentioned . ·

Returning again to the dispute with respect to the date of the issuance of the $1,000 check, whether it was March 3 or March 26, it may be noted that this check was No. 144 and corresponded with the date and number of the stub, and the check stubs Nos. 138, 139, 140, 141, 142 and 143 were all written by appellee on March 10, 11, 21 and 24, respectively, and all these checks except one were paid on or before March 26 and the stubs do not show that any check was drawn in the month of March for $1,000 except on March 26. The observations we have made, however, concerning appellee's testimony, are not to be construed to mean that we do not think the evidence was insufficient to take the case to the jury. And, we may add that certain parts of appellant's testimony given at the examining trial and on the trial on the criminal prosecution and the present trial are also lacking in consistency and more or less difficult to harmonize.

We now come to consideration of the question of the verdict and judgment being excessive. Appellant was paying appellee a salary of $12 per week, and according to her own testimony she remained in the employ of appellant for approximately one month after the dispute arose between them concerning the alleged shortage in accounts, and she then resigned and accepted other employment at $24 per week and admitted that this was more money than she had ever made before. She showed no special or pecuniary damage except $150 for attorney fees for her defense in the criminal prosecution, and aside from that item the only injury sustained by appellee justifying substantial damages were mental suffering and injury to her reputation. It is seriously insisted for appellant that in the circumstances it is at once apparent that an award of $7,500 damage is excessive and was brought about by passion and prejudice, or a flagrant abuse of discretion on the part of the jury. In W. T. Grant Company v. Taylor, 223 Ky. 812, 4 S. W. 2d 741, 744, which was an action for malicious prosecution, it appears that the conduct of the defendant in that case was far more reprehensible with respect to giving Mrs. Taylor an opportunity to vindicate herself or explain her innocence before any criminal prosecution was instituted than was that of appellant in the present case.

In the case, supra, it appears that the agent and employees of the defendant company closed their minds to all reason and appeals offered by Mrs. Taylor to convince them of her innocence and caused a warrant to be issued against her upon which she was committed to jail. It is pointed out in that opinion that in the circumstances a prudent person would have made an investigation on the items and information pointed out to the defendant by Mrs. Taylor. In the present case appellee was given full time and opportunity to adjust or explain her accounts and to demonstrate her innocence even before any prosecution was instituted. In the Taylor case this court held the verdict and judgment of $12,500 excessive, notwithstanding the indiscreet and reprehensible conduct of the defendant. In the course of the opinion, the court said: "The largest verdict that has been sustained in this state in a case of malicious prosecution was one for $3,000. H. S. Leyman Co. v. Short, 214 Ky. 272, 283 S. W. 96. In that case the plaintiff was arrested on a charge of larceny, placed in jail, where he became covered with vermin, prevented from seeing his wife, who was seriously ill, and caused to lose $1,500 in money. We do not mean to be understood as holding that a larger verdict would not be sustained if warranted by the facts, but we are of opinion that the actual damages shown in this case do not warrant a verdict for $12,500. Actions for malicious prosecution are not favored in law, since public policy favors the exposure of crime, and large verdicts in such actions should be viewed with more concern than similar verdicts in other cases involving tortious acts. J. B. Colt Co. v. Grubbs (206 Ky. 809, 268 S. W. 817), supra; Illinois C. R. Co. v. Anderson, 206 Ky. 600, 268 S. W. 311; Bazzell v. Illinois C. R. Co., 203 Ky. 626, 262 S. W. 966." In view of the nature of the action and all the facts and attendant circumstances considered, we are constrained to the conclusion that the sum awarded appellee is excessive.

In regard to the instructions, it is not seriously insisted in brief of appellant that they were prejudicially erroneous except, however, it is said that the court should have peremptorily instructed the jury to find a verdict for appellant because appellee failed to prove malice. It is the known rule that since it is difficult to prove malice by direct testimony, malice may be inferred from the circumstances, especially where there

is no showing of probable cause. Since the evidence was sufficient to take the case to the jury on the question of probable cause, the trial court did not err in refusing appellant's offered peremptory instruction. Other minor criticisms of instructions are pointed out in brief of appellant but upon an examination of the instructions for ourselves, we think that once they are read and considered together they fairly presented the issues to the jury with reasonable clarity and we see no reason why any reasonably intelligent jury could have been confused or misunderstood them.

Wherefore, the judgment is reversed and remanded, with directions to set it aside and to grant appellant a new trial, and for proceedings consistent with this opinion.