**Irvin M. LEVINE, Appellant,**

v.

**Richard Henry MILLS, Appellee.**

No. 1607.

Municipal Court of Appeals for the District of Columbia.

Argued March 21, 1955.

Decided May 27, 1955.

Samuel Z. Goldman, Washington, D. C., with whom Joseph D. Bulman, Washington, D. C., was on the brief, for appellant.

Emmett Leo Sheehan, Washington, D. C., with whom Landon Gerald Dowdey, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

A defendant appeals from a judgment of $7,500 entered against him in a suit for malicious prosecution.

The trouble started one night in December 1951 when Richard Levine, then a boy of twelve, came home in tears and reported to his parents that while on his way home on a Capital Transit bus the driver, Richard Mills, in demanding surrender of a transfer had yelled at him, grabbed and shook him, and pushed him toward the open door of the bus which was then in motion, and that he was saved from falling to the ground by another boy who was with him at the

time. Richard's parents then went with him to a police station where they reported the occurrence. A detective was assigned to the case and went with the Levines to the bus terminus. There, it was testified, Mills at first denied ever having seen Richard before, but later admitted that he had shaken the boy. Levine denounced Mills (in language to which we refer more fully later). The detective notified all the parties to appear the following morning at an informal hearing before an Assistant United States Attorney. At the hearing Levine signed an application for a warrant and following another session in the same office a warrant was issued charging Mills with an assault on Richard. (At the trial of this present suit Levine said that the Assistant United States Attorney had recommended prosecution; Mills said that the prosecutor had advised Levine not to prosecute the case; and the prosecutor himself was not called as a witness because he reported that he had no recollection of the events.)

Mills was acquitted of the assault charge and then sued Levine in the United States District Court for the District of Columbia for malicious prosecution. Later Levine brought suit in behalf of his son Richard in the same court for damages for the alleged assault, naming as defendants Mills and the transit company. The District Court judge presiding at pretrial ordered that both cases be certified to the Municipal Court because he felt that a verdict exceeding $1,000 was not justified. This is a procedure authorized by Code 1951, § 11–756.

In the Municipal Court, the pretrial judge ordered the cases consolidated for trial; but when the actual trial was about to start, the judge presiding, on his own motion and over objection of Levine's counsel, ordered that the two cases be tried separately.

The jury awarded plaintiff $5,000 compensatory damages and $2,500 punitive damages. Defendant moved timely for a new trial (and in the alternative for a judgment n. o. v.) on several grounds, including excessiveness of the verdict. In considering this question we must discuss the evidence

at greater length. Testimony given by the Levine boy and his companion was that as they were attempting to leave the bus by a side door Mills yelled at them to come to the front door and after reproaching him for keeping the transfer behind his ear, assaulted the boy in the manner we have already described. Mills gave a different version of the occurrence. He said that when Richard and another boy boarded the bus Richard had his transfer rolled up behind his ear; that when Mills asked him for the transfer he took it from behind his ear and pointed it at Mills; that when Mills reached for it Richard snatched it away from him; and that when Mills again asked to see the transfer Richard threw it in his face; he said that the boys were attempting to leave the bus by the front (not the side) door when the incident took place. He did not deny touching the boy, but said, "I laid my hand on his shoulder just as if I would correct my own child if he was out of line," and that he called on the boy to behave better the next time he got on the bus. As to the incident at the bus terminus, there seems to be no doubt that all the parties, Mills, Levine and the boy, were excited and that angry words were spoken. It was testified that though Mills first denied ever having seen Richard, he then admitted taking him by the shoulder and shaking him up; that Mills acted "ornery" and like a "wild man" and refused to give the police officer his name. It was also testified that Levine accused Mills of being drunk or behaving like a drunken man, and made statements to the effect that Mills should be fired and that if Mills worked for him he would fire him on the spot.

After the warrant had been issued, Mills' superintendent called him into his office and told him to go to No. 8 Police Precinct and pick up the warrant. When Mills went there about 9:00 p. m. he was booked and put in a cell. About a half hour later he was taken from the cell, interrogated at great length, and then returned to the cell. Around midnight he was taken in a police wagon to police headquarters along with a woman who was very drunk and disorderly and who created a mess in the wagon. At headquarters he was fingerprinted, photographed, and interrogated at still greater length. Then he was returned to the Precinct in the same wagon in company with the same disorderly woman. He was again "locked up, momentarily," and was then permitted to deposit $25.00 collateral and leave. He testified that as a result of the incident he had a weak stomach and that he was upset for about a month (his wife said two months). He said he consulted a physician who prescribed medicine for his nervous stomach. (In a deposition given earlier he had said that he did not receive medical attention as a result of the incident.) He said that after the incident his friends and fellow employees called him "child beater" and "jail bird." But he lost no time from his work, was still working for the transit company, and offered no evidence that his standing with the company had in any way deteriorated because of or since the arrest. There was no evidence of any pecuniary loss.

 It has long been generally accepted judicial policy that suits of this kind are not favored in the law. Vancouver Book & Stationery Co. v. L. C. Smith & Corona Typewriters, 9 Cir., 138 F.2d 635, certiorari denied 321 U.S. 786, 64 S.Ct. 780, 88 L.Ed. 1077; National Surety Co. v. Page, 4 Cir., 58 F.2d 145, rehearing denied, 4 Cir., 59 F.2d 370. See also 34 Am.Jur., Malicious Prosecution, § 5, p. 705. Courts have taken the position that one who seeks to enforce rights which have been violated is not thereby committing a legal wrong, but may actually be performing a moral duty, and that a citizen should have free access to the courts in having his rights determined without being forced to respond in damages when he has caused a prosecution in good faith and on reasonable grounds. See 54 C.J.S., Malicious Prosecution, § 3, page 955. For the same reason it is right and logical that large verdicts in this type of action should be viewed with more concern and examined more critically for excessiveness than verdicts in other tort actions. Peel v. Bramlett, 298 Ky. 20, 181 S.W.2d

448, affirmed 305 Ky. 577, 204 S.W.2d 565; W. T. Grant Co. v. Taylor, 223 Ky. 812, 4 S.W.2d 741; Randol v. Kline's, Inc., 330 Mo. 343, 49 S.W.2d 112.

We agree that it is important that one falsely accused of crime and maliciously prosecuted should be reasonably compensated for his injury. We also agree that when the accuser has acted from evil motives or wantonly or oppressively, or from proven actual malice,[1] the law authorizes a jury to say that he ought to pay punitive damages. But we are well aware that in these cases there are often strong emotional overtones, making it easy for a jury to succumb to passion or prejudice or other improper motives, or to misconceptions of the evidence or the court's instructions. We cannot free ourselves from the conviction that there was such a misadventure in this case. We must hold that the verdict was excessive and cannot be permitted to stand.

We do not for a moment minimize the discomfiture which plaintiff endured, but the worst of his suffering, which he stressed in brief and argument, was during the several hour period he was in the hands of the police after he went voluntarily to pick up the warrant. If he was mistreated by the police or held or questioned longer than was justified in a case of simple assault, or if he was subjected to distasteful episodes while in the police wagon, then it is reasonable to argue that these troubles cannot fairly be charged to Levine as a natural and probable result to be expected from the complaint he had made against Mills.[2] It is not necessary that we declare such to be the law of this case; it is sufficient to say

that it is reasonable and logical to employ that approach in testing whether the verdict is in an area which must be called excessive.

We think it is proper to point out that though it is relevant and proper, in this type of case, to offer evidence of a defendant's financial worth to help the jury on the question of punitive damages,[3] plaintiff offered no evidence and asked no questions on this subject. (Plaintiff's counsel did by way of a side remark refer to the defendant as a member of the Bar, but there was no evidence of that fact or whether defendant was in private practice or employed privately or by the government.) So the jury was given no guide as to defendant's salary, income, property holdings or financial status. Thus we have a judgment which not only bears no reasonable relationship to the evidence, but which might also prove wholly ruinous to defendant.

In the states, appellate courts have generally followed the procedure of ordering a remittitur of part of a recovery which is deemed excessive. But as we pointed out in Munsey v. Safeway Stores, D.C.Mun. App., 65 A.2d 598, Federal appeals courts seem to have limited such practice to contract cases and the like, where the excess amount of the verdict can be fairly well determined, but have not undertaken to cure by remittitur an excessive verdict rendered in tort actions for unliquidated damages. This case being clearly in the unliquidated field, and there being no formula by which we could compute the proper amount of a remittitur (even if we thought

---

1. Here the proof of actual malice was dubious at best, and the judge though requested to do so refused to explain to the jury that though the claim for compensatory damages may be supported by malice inferred from the circumstances, an award of punitive damages may only be predicated on actual, not inferred, maliciousness. Well considered cases make this important distinction. Stewart v. Sonneborn, Fed.Cas.No.13,176, 2 Woods 599, reversed on other grounds 98 U.S. 187, 25 L.Ed. 116; Biggans v. Hajoca

Corp., D.C.Pa., 94 F.Supp. 593, affirmed, 3 Cir., 185 F.2d 982; Sparrow v. Vermont Savings Bank, 95 Vt. 29, 112 A. 205.

2. See Flam v. Lee, 116 Iowa 289, 90 N.W. 70; Foster v. Chicago, B. & Q. R. Co., 321 Mo. 1202, 14 S.W.2d 561; Baer v. Chambers, 67 Wash. 357, 121 P. 843.

3. Restatement, Torts, § 908e; Coleman v. Allen, 79 Ga. 637, 5 S.E. 204; Aland v. Pyle, 263 Pa. 254, 106 A. 349; McIntosh v. Wales, 21 Wyo. 397, 134 P. 274.

a remittitur would cure the injustice), our only course is to order a new trial.

Reversed.

HOOD, Associate Judge (dissenting).

The majority opinion holds that the verdict of the jury in an action for malicious prosecution was excessive and on that ground alone reverses the judgment. Before stating the grounds for my disagreement, I think it proper to give some consideration to the power of an appellate court in a federal jurisdiction to review a judgment for alleged excessiveness of the verdict.

In Southern Railway Carolina Division v. Bennett, 233 U.S. 80, 34 S.Ct. 566, 567, 58 L.Ed. 860 Mr. Justice Holmes, speaking for the court said: "But a case of mere excess upon the evidence is a matter to be dealt with by the trial court. It does not present a question for re-examination here upon a writ of error." Nearly twenty years later, in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439, in an opinion by Mr. Justice Brandeis, the court said: "This Court has frequently refrained from disturbing the trial court's approval of an award of damages which seemed excessive or inadequate, and the circuit courts of appeals have generally followed a similar polity."

Largely as a result of those two decisions, we find frequent statements in the federal circuits that a claim of excess in the verdict is not the subject of appellate review. Thus in this jurisdiction it was said in Washington Times Co. v. Bonner, 66 App. D.C. 280, 293, 86 F.2d 836, 849, 110 A.L.R. 393, 411: "In any event, we are not at liberty to reverse on account of the size of the verdict. The rule is settled in the Federal courts, not only in libel actions but also in general, that an appellate tribunal will not review the action of a trial court in granting or denying, for excessiveness or inadequacy of the verdict, a motion for a new trial." In Behrman v. Sims, 81 U.S. App.D.C. 303, 305, 157 F.2d 862, 864, the court said: "The final point of the appellant is that the verdicts were excessive. Be that as it may, this court is without authority to review on that score." And again, in Feltman v. Sammond, 82 U.S.App. D.C. 404, 166 F.2d 213, it was said: "It is settled that we cannot review a trial court's decision to grant or deny a new trial on the ground that a verdict was excessive or inadequate."

In other federal circuits we find similar statements. In Searfoss v. Lehigh Valley R. Co., 2 Cir., 76 F.2d 762, 763, the court said: "This court lacks the power to review as a question of fact the subject of excessive damages." In Scott v. Baltimore & O. R. Co., 3 Cir., 151 F.2d 61, 64, the court said: "The third point urged by the defendant is that the damages fixed by the jury at $35,000 are excessive. The members of the Court think the verdict is too high. But they also feel very clear that there is nothing the Court can do about it." In Atlantic Coast Line R. Co. v. Pidd, 5 Cir., 197 F.2d 153, 156, certiorari denied 344 U.S. 874, 73 S.Ct. 166, 97 L.Ed. 677, it was said: "A verdict is unreviewable by an appellate court for alleged excessiveness if it is excessive only in fact." In Flener v. Louisville & N. R. Co., 7 Cir., 198 F.2d 77, 80, the court said: "This court has adhered to the rule that it will not review a judgment for excessiveness of damages." And in Zimmerman v. Mathews Trucking Corp., 8 Cir., 203 F.2d 864, 868, the court said: "This Court has consistently adhered to the proposition that the responsibility for keeping jury awards within reasonable bounds is essentially that of the trial courts and not of this Court."

Despite the seemingly flat statements that excessiveness of verdict is not reviewable, we find statements or at least indications in the decisions that the action of a trial court in refusing to set aside a verdict for excessiveness may be reviewed to determine whether such action constituted an abuse of discretion. In this jurisdiction in Hecht Co. v. Jacobsen, 86 U.S.App.D.C. 81, 86, 180 F.2d 13, 18, it was said: "We do not think that the trial court abused its discretion when it sustained the jury's award

of $15,000 to the infant plaintiff and $2,000 to her father." In Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 190 F.2d 825, 830, the court said: "The question of excessiveness of a verdict is primarily one for the trial court; where, however, the verdict is grossly excessive, the denial by the trial court of a motion for a new trial constitutes such an abuse of discretion that this court will remand the cause for a new trial." In Bradley Min. Co. v. Boice, 9 Cir., 194 F.2d 80, 83, petition for rehearing en banc denied, 9 Cir., 205 F.2d 937, certiorari denied 346 U.S. 874, 74 S.Ct. 125, 98 L.Ed. 382 the court said: "At most we may consider only whether the verdict is grossly excessive or 'monstrous.'"

In Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 101, 70 S.Ct. 509, 511, 94 L.Ed. 683, the Supreme Court said: "We agree with the Court of Appeals that the amount of damages awarded by the District Court's judgment is not monstrous in the circumstances of this case." This statement has been construed as an indication by the Supreme Court that an appellate court may reverse a judgment where the amount awarded is so excessive as to be monstrous. See Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 190 F.2d 825, 830, footnote 10; Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 191 F.2d 302, 310. But also see Stevenson v. Hearst Consol. Publications, 2 Cir., 214 F.2d 902, 911, certiorari denied 348 U.S. 874, 75 S.Ct. 110.

In spite of these numerous statements or indications that an appellate court may reverse for excessiveness of verdict there are remarkably few instances in which it has been done. A notable instance is found in Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 4 A.L.R.2d 1064. See also Boyle v. Bond, 88 U.S.App.D.C. 178, 187 F.2d 362; Southern Railway Company v. Neese, 4 Cir., 216 F.2d 772; Texas Co. v. Christian, 5 Cir., 177 F.2d 759; Cobb v. Lepisto, 9 Cir., 6 F.2d 128.

I have made no attempt to review all the cases or to discuss the reasons given for the various rulings. Full and interesting discussions may be found in Judge Lindley's opinion in Bucher v. Krause, 7 Cir., 200 F. 2d 576, certiorari denied 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404, in Judge Holmes' dissenting opinions in Sunray Oil Corporation v. Allbritton, 5 Cir., 187 F.2d 475, 477; Id., 5 Cir., 188 F.2d 751, 752, certiorari denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626, and in Judge Learned Hand's opinion in Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463. Perhaps the question will be definitely settled by the Supreme Court which has granted certiorari, 348 U.S. 950, 75 S.Ct. 439, in Southern Railway Company v. Neese, 4 Cir., 216 F.2d 772. For present purposes it is enough to say that the rule in federal jurisdictions recognizes that in an action for unliquidated damages, the question of excess of verdict is primarily one for the trial court, and that an appellate court may not reverse merely because it is convinced that the verdict was excessive. If an appellate court may reverse for excessiveness of verdict, it may do so only where the verdict is so grossly excessive or monstrous as to demonstrate clearly that the trial court abused its discretion in permitting it to stand. Brest v. Philadelphia Transportation Company, 3 Cir., 216 F.2d 331; Kilmer v. Gustason, 5 Cir., 211 F.2d 781; Chicago, Rock Island & Pacific Railway Co. v. Kifer, 10 Cir., 216 F.2d 753, certiorari denied 348 U.S. 917, 75 S.Ct. 299.

Guided by those rules I cannot join in the majority opinion. Here we have a verdict which establishes that defendant maliciously and without probable cause instituted criminal proceedings against plaintiff. As a result plaintiff was arrested, searched, interrogated at length, and locked up in a precinct cell; taken in a patrol wagon to headquarters where he was photographed, fingerprinted, and again interrogated; returned to the precinct, again locked in a cell, and finally released on bail. All this covered a period of about six hours. Plaintiff was then compelled to go through the suspense of waiting for a trial and finally to defend himself in court. As a result of this he was nervous, could not sleep, could not eat, and lost weight. I do not detail the evidence because I think this brief outline is sufficient to show that the verdict of the

jury, though perhaps high, was not grossly excessive or monstrous. Nothing in the record indicates passion or prejudice on the part of the jury. The trial judge did not think the verdict excessive. There is no yardstick by which damages in this type of case may be measured. The jury were entitled to consider plaintiff's injury to reputation, his humiliation, his mental and emotional stress, and his uncertainty and worry while the proceedings were undetermined, with the possibility of losing his employment. Melvin v. Pence, 76 U.S.App.D.C. 154, 159, 130 F.2d 423, 428, 143 A.L.R. 149; Soffos v. Eaton, 80 U.S.App.D.C. 306, 307, 152 F.2d 682, 683. The amount of the verdict must be left to the collective judgment of the jury under the supervisory right of the trial judge to set it aside or order a remittitur if he is convinced it exceeds reasonable bounds. In the early days of this court, in an action for malicious prosecution, we ruled that factual conflict on the issues of malice and probable cause should be left to the jury, because otherwise " 'trial by jury becomes trial by court.' " Viner v. Friedman, D.C.Mun.App., 33 A.2d 631, 633,

I think in this case that damages were also a factual question for the jury and the majority opinion invades the right of trial by jury as well as the prerogative of the trial court.

I shall mention two other points made in the majority opinion. One is the statement that suits for malicious prosecution are not favored in law. I know of no such ruling in this jurisdiction. Recent decisions seem to me to indicate a contrary trend. In Melvin v. Pence, supra, the law of malicious prosecution was extended to include wrongful institution of an administrative proceeding; and in Soffos v. Eaton, supra, the law of malicious abuse of process, closely akin to malicious prosecution, was broadened.

The majority seems to lay some stress upon the fact that there was no evidence of defendant's financial worth. Possibly plaintiff could have introduced such evidence, but I know of no rule of law requiring him to do so.

For the reasons stated above, I dissent.